2015 CO 53

**In re The PEOPLE of the State of Colorado, Plaintiff**

v.

**Kevin F. ELMARR, Sr., Defendant**

**Supreme Court Case No. 14SA35**

Supreme Court of Colorado.

June 29, 2015

---

Attorneys for Plaintiff: Stanley L. Garnett, District Attorney, Twentieth Judicial District, Sean P. Finn, Chief Appellate Deputy District Attorney, Nicole Mor, Appellate Deputy District Attorney, Boulder, Colorado

Attorneys for Defendant: Douglas K. Wilson, Public Defender, Nicole Collins, Deputy Public Defender, Kristin Johnson, Deputy Public Defender, Boulder, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this original proceeding pursuant to C.A.R. 21, we consider the trial court's determination regarding the admissibility of alternate suspect evidence offered by the defendant, Kevin F. Elmarr. In 2009, a jury found Elmarr guilty of first degree murder after deliberation for strangling his ex-wife. In an unpublished decision, the court of ap-

peals reversed Elmarr's conviction and remanded for a new trial, concluding that the trial court erred by excluding evidence of two alternate suspects. *People v. Elmarr*, No. 09CA2462, 2013 WL 539827 (Colo.App. Feb. 14, 2013). Before the new trial, the People moved to exclude evidence of similar acts by one of those alternate suspects, as well as out-of-court statements made by that alternate suspect implicating himself in both the other similar acts and the charged crime. Following a motions hearing, the trial court, relying largely on the court of appeals' decision remanding the case, denied the People's motion to exclude the other acts evidence and the out-of-court statements.

¶ 2 The People now petition this court for relief under C.A.R. 21, arguing that the trial court failed on remand to conduct the proper analysis to determine the admissibility of the alternate suspect evidence—in particular, evidence of other similar acts committed by the alternate suspect and statements made by the alternate suspect to law enforcement. The People contend that this area of the law has generated considerable confusion and ask this court to clarify the proper framework for examining the admissibility of such evidence.

¶ 3 We agree with the People that the trial court failed to conduct the proper analysis and thus make absolute our rule to show cause. The trial court understood the court of appeals' decision remanding the case to require admission of the alternate suspect evidence. We conclude, however, that the court of appeals, relying on *People v. Muniz*, 190 P.3d 774 (Colo.App.2008), applied an incorrect framework for analyzing the admissibility of alternate suspect evidence. We set forth the proper framework below and remand this case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 4 On May 23, 1987, hikers discovered the body of Carol Murphy near a campsite in Boulder County's Lefthand Canyon. Murphy had been killed by ligature strangulation, her throat had been cut, and branches and foliage had been placed over her body. The

day before, Murphy had told several people that she and her "ex" were going to the mountains on his motorcycle for a picnic. That same day, Elmarr, Murphy's ex-husband, told his sister that he and Murphy were going on a picnic in the mountains. Two witnesses identified Elmarr as the man who had accompanied Murphy on the day the prosecution believes she was killed. Nearly twenty years later, on February 1, 2007, the prosecution charged Elmarr with first degree murder for Murphy's death.

¶ 5 Before trial, Elmarr notified the court that he intended to introduce evidence pertaining to several alternate suspects. This list included Curtis Murphy, the victim's husband, whom she was in the process of divorcing; William Taylor, the victim's boyfriend; Clifton St. Denis, a homeless man who had been camping near where the victim's body was discovered; Andrew Lloyd, who had previously threatened the victim; Blaine Luzmoor, who had been in a prior romantic relationship with the victim; and an unidentified man named "Billy." The People moved to exclude all alternate suspect evidence. Following a hearing, the trial court issued an order excluding evidence of all alternate suspects.[1] Only the evidence regarding St. Denis is at issue here.

¶ 6 Elmarr sought to introduce evidence suggesting that St. Denis murdered the victim. In addition to evidence linking St. Denis to the crime scene, Elmarr sought to introduce statements St. Denis made to detectives purportedly confessing to the murder and evidence of two other crimes committed by St. Denis involving acts of strangulation in the same calendar year as the homicide in this case.

¶ 7 St. Denis was considered a suspect in the case for several years. He was camping in the area where the victim's body was found. Detectives interviewed him about a year later while he was confined at a state mental hospital. St. Denis admitted to being in the area when the murder occurred. He described the location where the victim's body was found and stated that a suitcase

---

**1.** After the trial court excluded evidence of all alternate suspects, the People stipulated that certain evidence concerning alternate suspect Taylor was admissible.

found near the crime scene belonged to him. He also admitted that he usually carried survival knives. St. Denis stated that the night the victim died, he had stabbed a tall, thin man who arrived in the area in a green pickup truck. He also recalled seeing a motorcycle. He stated that someone told him that a woman was killed near where he had stayed that night and that he "coulda" done it because he "got violent that night." He stated that a fight occurred "across the creek." When asked if he killed the victim, he responded "Ye[a]h." He later confessed in the interview that he "believe[d] [he] did that [killed the victim] . . . in a blacked out state."

¶ 8 During the interview, St. Denis also made statements about having killed his roommate, Molly Currier, in New York. When asked if the victim in this case "got it the same way that Molly did in New York," he replied, "[Y]e[a]h, in the end . . . that's why I said I think it was me. In the end when I think she was screamin' I had her. . . ." He stated, "I don't know if I stabbed her or not. I don't remember." St. Denis acknowledged being under the influence of drugs when he was interviewed. He later recanted his confession to killing the victim in this case.

¶ 9 Currier was found dead in her apartment in February 1987. St. Denis admitted to strangling her and later entered a plea of not guilty by reason of insanity in that case.[2] In December 1987, St. Denis also strangled and threatened his roommate and girlfriend, Holly Lutz, with a knife. He confessed to her attempted murder, and, after he waived a jury trial, the court found him not guilty by reason of insanity. St. Denis has since died.

¶ 10 In its pretrial order analyzing the admissibility of this evidence, the trial court discussed *People v. Muniz*, 190 P.3d 774 (Colo.App.2008), in which the court of appeals distinguished between alternate suspect evidence offered to show motive or opportunity and alternate suspect evidence bearing on the issue of identity. *Muniz* held that where a defendant wishes to present alternate suspect evidence that bears on the issue of identity, proof of some other act directly connecting the alternate suspect to the charged crime is not required in order to admit evidence that an alternate suspect committed a similar offense. *Id.* Rather, it held that the test for admissibility under such circumstances is one of relevancy, and the relevance of the evidence should be determined by considering the totality of the circumstances. *Id.* at 780–81.

¶ 11 The trial court determined that the evidence regarding St. Denis pertained only to motive and opportunity, not identity, and thus the *Muniz* "totality of the circumstances" test was inapplicable. Applying the "direct connection" test instead, the trial court concluded that the alternate suspect evidence regarding St. Denis was not admissible. In addition to finding that St. Denis's statements contained discrepancies, the trial court concluded that there was no evidence of acts directly connecting St. Denis to the charged crime, nor was there any motive, even assuming St. Denis had the opportunity to commit the crime due to the proximity of his campsite. The court's order did not discuss hearsay rules, but it noted that it was confident St. Denis was not lucid when he stated he "coulda" committed the murder. The court therefore granted the People's motion in limine to exclude the alternate suspect evidence.

¶ 12 Following trial, a jury found Elmarr guilty of first degree murder after deliberation. The trial court sentenced Elmarr to life with the possibility of parole after forty years. On appeal, Elmarr argued, inter alia, that by excluding evidence of alternate suspects, the trial court prevented him from presenting evidence in his defense in violation of his due process rights under the Fourteenth Amendment and article II, section 25 of the Colorado Constitution. *See People v. Elmarr*, No. 09CA2462, slip op. at 4, 2013 WL 539827 (Colo.App. Feb. 14, 2013).

¶ 13 The court of appeals agreed with Elmarr that the trial court erroneously excluded alternate suspect evidence regarding St. Denis and Charles Murphy. *Id.* at 2.[3]

---

2. It is unclear from the record how the Currier case was resolved.

3. The court of appeals affirmed the trial court's exclusion of alternate suspect evidence regarding Lloyd, Luzmoor, and "Billy." *Id.* at 19–21.

¶ 14 The court of appeals held that the trial court abused its discretion by treating this alternate suspect evidence as motive and opportunity evidence and therefore applying the wrong standard (i.e., the direct connection test) to its admissibility. *Id.* at 12. The court of appeals determined that this evidence instead pertained to identity. *Id.* Thus, it reasoned that the trial court should have applied a "totality of the circumstances" test under *Muniz* to determine its admissibility. *Id.*

¶ 15 The court of appeals further held that, contrary to the trial court's ruling, St. Denis's confession was "not so palpably incredible and totally unbelievable to justify rejecting it as a matter of law." *Id.* Although it did not address evidentiary rules regarding hearsay, the court of appeals observed that St. Denis's confession was corroborated by other evidence, including details he provided about the crime scene and his description of the suitcase found in the area. *Id.* at 13. It reasoned that these details, in conjunction with St. Denis's history of strangling women, his proximity to the location where the body was found, and his statement that he "believed" he had killed the victim, made the credibility of his confession an issue for the jury to resolve. *Id.*

¶ 16 The court of appeals concluded that when all the evidence concerning St. Denis is considered, it was "sufficient to permit a reasonable juror to have a reasonable doubt about [the] defendant's guilt because it tended to make [the] defendant's identity as the perpetrator less probable." *Id.* at 15. Finally, the court of appeals noted that it was "not persuaded that the evidence's probative value was substantially outweighed by other considerations such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* The court of appeals held that the trial court's error required reversal and remanded the case for a new trial. *Id.* at 17–19, 34. The People filed a petition for writ of

certiorari, which this court denied. *People v. Elmarr*, No. 13SC280, 2013 WL 6440264, at *1 (Colo. Dec. 9, 2013).

¶ 17 On remand, Elmarr filed a notice of intent to introduce evidence of other bad acts by St. Denis, as well as a notice of intent to introduce statements by St. Denis under CRE 807's residual hearsay exception. The People moved to exclude both the other acts evidence and the hearsay statements. Following a hearing, the trial court (with a different judge presiding) issued an order denying both of the People's motions. The People then petitioned this court pursuant to C.A.R. 21 for review of the trial court's order.

## II. Jurisdiction

¶ 18 This court may exercise its original jurisdiction under C.A.R. 21 to review a trial court's evidentiary rulings where the petitioning party has no other adequate appellate remedy. C.A.R. 21; *see People v. Dist. Court*, 869 P.2d 1281, 1285 (Colo.1994). The granting of a remedy under C.A.R. 21 is entirely within the discretionary authority of this court. *Dist. Court*, 869 P.2d at 1285.

¶ 19 If the evidence challenged by the prosecution is improperly admitted on retrial, there may not be a remedy on appeal, as jeopardy will attach and the People cannot retry the defendant if he is acquitted. As a result, we conclude that the People have no other adequate remedy and exercise of our original jurisdiction is appropriate. *See id.*; *see also People v. Salazar*, 2012 CO 20, ¶ 13, 272 P.3d 1067, 1071.[4]

## III. Standard of Review

¶ 20 Trial courts have broad discretion in determining the admissibility of evidence based on its relevance, its probative value, and its prejudicial impact. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993). We will reverse the trial court's evidentiary rulings

4. Our initial denial of certiorari review of the court of appeals' unpublished decision in *People v. Elmarr*, No. 09CA2462, 2013 WL 539827 (Colo.App. Feb. 14, 2013), *cert. denied*, No. 13SC280, 2013 WL 6440264, at *1 (Colo. Dec. 9, 2013), does not affect our ability to review the case today. A denial of a writ of certiorari does not constitute judicial review on the merits; therefore, we may reach the substantive issues arising from that decision. *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo. 2003). We elect to do so now, in the context of exercising our original jurisdiction under C.A.R. 21.

only for an abuse of discretion. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002). A trial court abuses its discretion where its ruling is "manifestly arbitrary, unreasonable, or unfair," *id.*, or where it is based on an erroneous view of the law, *People v. Wadle,* 97 P.3d 932, 936 (Colo.2004).

## IV. Analysis

¶ 21 This case requires us to clarify the framework for the admissibility of alternate suspect evidence, including evidence of other crimes, wrongs, or acts committed by the alternate suspect.

¶ 22 We hold that the admissibility of alternate suspect evidence ultimately depends on the strength of the connection between the alternate suspect and the charged crime. To be admissible, alternate suspect evidence must be relevant (under CRE 401) and its probative value must not be sufficiently outweighed by the danger of confusion of the issues or misleading the jury, or by considerations of undue delay (under CRE 403).

¶ 23 The touchstone of relevance in this context is whether the alternate suspect evidence establishes a non-speculative connection or nexus between the alternate suspect and the crime charged. Where the evidence concerns other acts by the alternate suspect, a court must look to whether all the similar acts and circumstances, taken together, support a finding that the same person probably was involved in both the other act and the charged crime. CRE 404(b) principles guide this analysis.

¶ 24 Where the evidence concerns statements by the alternate suspect, a court must determine whether the alternate suspect's statements meet the requirements of CRE 804(b)(3) or any other applicable hearsay exception. Even assuming the statements are admissible under the rules governing hearsay, the court must still determine whether the statements, along with the other proffered alternate suspect evidence, establish the requisite non-speculative connection tying the alternate suspect to the charged crime.

¶ 25 Finally, even relevant alternate suspect evidence may be excluded if its probative value is substantially outweighed by countervailing policy considerations under CRE 403, such as the danger of confusion of the issues or misleading the jury, or by considerations of undue delay.

### A. General Evidentiary Limits on the Constitutional Right to Present a Defense

¶ 26 "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (internal quotation marks omitted); *see also People v. Salazar,* 2012 CO 20, ¶ 17, 272 P.3d 1067, 1071. Put differently, a criminal defendant is entitled to all reasonable opportunities to present evidence that might tend to create doubt as to the defendant's guilt. *See People v. Bueno,* 626 P.2d 1167, 1169 (Colo.App.1981).

¶ 27 However, the right to present a defense is generally subject to, and constrained by, familiar and well-established limits on the admissibility of evidence. As a fundamental matter, evidence must be relevant to be admissible. CRE 402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. And even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

### B. Purpose of Alternate Suspect Evidence

¶ 28 The relevance and probative value of alternate suspect evidence must be examined in light of the purpose such evidence serves. In a criminal prosecution,

identity is a material element of any charged crime. *See People v. Rath,* 44 P.3d 1033, 1040 (Colo.2002); *see also Salazar,* ¶ 15, 272 P.3d at 1071 (observing that identity is an element of the charged offense that the prosecution must prove). That is, the prosecution must prove, beyond a reasonable doubt, that the *defendant* (as opposed to someone else) committed the charged crime.

■ ¶ 29 Alternate suspect evidence seeks to cast reasonable doubt on the material element of identity. In other words, evidence indicating that someone else committed the crime tends to make the *defendant's* identity as the perpetrator less probable and, thus, creates reasonable doubt as to the defendant's guilt.[5]

¶ 30 A defendant might seek to present one or more forms of evidence suggesting that an alternate suspect committed the crime. Among other things, the defendant might seek to show that someone else: had a motive to commit the crime; had an opportunity to commit the crime; confessed to the crime or otherwise engaged in behavior indicating his involvement; is linked to physical evidence of the crime; or committed similar acts or crimes. All such evidence seeks to tie the alternate suspect to the charged crime, thus casting reasonable doubt on the identity of the defendant as the perpetrator of the charged crime.

### C. Framework for Admissibility of Alternate Suspect Evidence

¶ 31 Regardless of its form, the admissibility of this type of evidence in a given case ultimately depends on the strength of the connection between the alternate suspect and the charged crime. Because there is a need to place reasonable limits on collateral issues, and to avoid encouraging the jury to speculate, *see People v. Perez,* 972 P.2d 1072, 1074 (Colo.App.1998), alternate suspect evidence must be sufficiently probative to be admissible; that is, it must be both relevant (under CRE 401) and its probative value must not be sufficiently outweighed by the danger of

confusion of the issues or misleading the jury, or by considerations of undue delay (under CRE 403).

### 1. Relevance

■ ¶ 32 The touchstone of relevance in this context is whether the alternate suspect evidence establishes a non-speculative connection or nexus between the alternate suspect and the crime charged. That is, the alternate suspect evidence must create more than just an unsupported inference or possible ground for suspicion. *Perez,* 972 P.2d at 1074; *see also United States v. Jordan,* 485 F.3d 1214, 1219 (10th Cir.2007) ("[C]ourts may properly deny admission of alternative perpetrator evidence that fails to establish, either on its own or in combination with other evidence in the record, a non-speculative 'nexus' between the crime charged and the alleged perpetrator."); 41 C.J.S. *Homicide* § 216, at 56–58 (1991) (noting that, frequently, alternate suspect evidence is so remote and lacks such connection with the crime that it is excluded); 40A Am.Jur.2d *Homicide* § 286, at 136–38 (1999) (noting that alternate suspect evidence may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote) (quoted in *Holmes,* 547 U.S. at 327, 126 S.Ct. 1727). Anything less may lead to speculative blaming that heightens the risk of jury confusion and invites the jury to render its findings based on emotion or prejudice. *See United States v. McVeigh,* 153 F.3d 1166, 1191 (10th Cir.1998). Whether the requisite connection exists requires a case-by-case analysis, taking into account all of the evidence proffered by the defendant to show that the alternate suspect committed the charged crime.

■ ¶ 33 In *People v. Mulligan,* 193 Colo. 509, 568 P.2d 449, 456–57 (1977), we held that evidence showing that other parties had a motive to commit the charged crime, without more, was insufficient to establish the necessary connection. We described the application-

---

**5.** In *People v. Flowers,* 644 P.2d 916, 918 (Colo. 1982), this court described this concept by stating that a defendant "may prove his innocence by establishing the guilt of another." To the

extent that this statement inadvertently suggested that a defendant bears the burden to "prove his innocence," this choice of phrasing was both unfortunate and inaccurate.

ble rule of law to be that evidence of another person's motive or opportunity "is not admissible without proof that [the alternate suspect] committed some act directly connecting him with the crime." *Id.* at 456 (quoting *State v. Umfrees,* 433 S.W.2d 284, 287 (Mo. 1968)).

¶ 34 Although our holding in *Mulligan* has been described by the court of appeals as the "direct connection" test, the case simply stands for the principle that evidence merely showing that someone else had a motive or opportunity to commit the charged crime—without other additional evidence circumstantially or inferentially linking the alternate suspect to the charged crime—presents too tenuous and speculative a connection to be relevant because it gives rise to no more than grounds for possible suspicion. Importantly, our holding in *Mulligan* was not intended to establish a specific "test" for evidence of an alternate suspect's motive or opportunity but instead reflects the overarching principle that, to be relevant, alternate suspect evidence must establish a non-speculative connection or nexus between the alternate suspect and the crime charged. In short, mere motive or opportunity is insufficient; a defendant must proffer something "more" to establish the non-speculative connection.

### 2. Other Acts Evidence Offered by a Defendant

¶ 35 Sometimes, the "more" offered to establish the non-speculative connection between the alternate suspect and the charged crime is evidence that the alternate suspect committed other similar acts or crimes. Under CRE 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence may be admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* This rule has roots in the common law principle that a defendant should be tried only for the offense for which he stands charged. *See Stull v. People,* 140 Colo. 278, 284, 344 P.2d 455, 458 (1959) ("Ba-

sic to our criminal law concepts is the commandment that: 'Thou shalt not convict a person of an offense by proof that he is guilty of another.' "). Evidence of criminal activity other than that for which the defendant is being tried has an inherent tendency to prejudice the jury against the defendant and induce it to find him guilty on the basis of his past activities rather than on the basis of the crime charged. *See Bueno,* 626 P.2d at 1169; *see also State v. Machado,* 226 Ariz. 281, 246 P.3d 632, 634–35 (2011) (observing that the common law rule restricting the use of other acts evidence was designed to prevent the defendant from being convicted simply because the jury might conclude from the other similar acts that the defendant was a "bad man"). It also "tends to inject collateral issues into a criminal case which are not unlikely to confuse and lead astray the jury." *People v. Garner,* 806 P.2d 366, 369 (Colo. 1991) (quoting *Stull,* at 284, 344 P.2d at 458).

¶ 36 CRE 404(b) is not, on its face, limited to evidence offered by the prosecution regarding similar acts committed by the defendant. However, the concern for prejudice to the defendant that gave rise to the common law rule that underpins CRE 404(b) does not exist when the defendant offers other acts evidence of an alternate suspect. *Salazar,* ¶ 18, 272 P.3d at 1072; *People v. Flowers,* 644 P.2d 916, 919 (Colo.1982).

¶ 37 When discussing the admissibility of other acts evidence offered by a defendant to link an alternate suspect to the charged crime, this court has not expressly referred to CRE 404(b) but has described the analysis as one to be decided on a case-by-case basis, according to "general relevancy considerations." *Salazar,* ¶ 18, 272 P.3d at 1072 (citing *Flowers,* 644 P.2d at 919).

¶ 38 In *Flowers,* this court adopted the court of appeals' formulation of the test in *Bueno,* 626 P.2d at 1170, for admissibility of other acts evidence introduced by the defendant. *Flowers,* 644 P.2d at 919. Although *Flowers* was decided after the adoption of the Colorado Rules of Evidence, our analysis in that case did not mention CRE 404(b). Rather, the discussion centered on section 16–10–301, C.R.S., a statute that applies in cases involving unlawful sexual behavior and

permits the prosecution to introduce other similar acts by a defendant "for any purpose other than propensity," including to show common plan, scheme, design, modus operandi, motive, opportunity, intent, preparation, identity, or absence of mistake, § 16–10–301(3), C.R.S. (2014). *See Flowers*, 644 P.2d at 919–20. Adopting the court of appeals' approach in *Bueno*, we held that, rather than being limited to the specific purposes enumerated in the statute, a trial court must decide the admissibility of similar acts evidence offered by a defendant on a case-by-case basis, looking to whether all the similar acts and circumstances, taken together, support a finding that the same person probably was involved in both the other act and the charged crime. *See id.*

¶ 39 Despite the "more lenient standard of admissibility" for defense-proffered other acts evidence that we adopted in *Flowers, id.* at 919, (quoting *Bueno*, 626 P.2d at 1169), CRE 404(b) principles have guided this case-by-case analysis—if not expressly, then at least implicitly. First, nothing in our discussion in that case suggests that evidence of an alternate suspect's other acts is admissible purely for the inference that the alternate suspect acted in conformity with his bad character. Second, the articulation of the test for admissibility in *Flowers* reflects that other acts of an alternate suspect generally are offered to show *identity* (a permissible purpose under CRE 404(b)). In this context, the evidence is offered to show that the same person (here, the alternate suspect) committed both the other similar acts and the charged act. As discussed in *Flowers,* an inference that the alternate suspect committed the other acts and the charged crime is permissible only where the prior acts and the charged crime share sufficient similar characteristics or details. Indeed, in *Flowers,* we upheld the trial court's exclusion of the other acts evidence because the "details of the other crimes were not distinctive or unusual enough to represent the 'signature' of a single individual" and thus did "not support a finding that the same person probably was involved in all the cases." *Id.* at 920. Likewise, in *Salazar,* this court concluded that the other acts evidence was "not distinctive or unusual enough" to support a finding that

the same person was probably involved in both cases. ¶ 26, 272 P.3d at 1074. These analyses echo the analyses this court has made under CRE 404(b).

¶ 40 In the alternate suspect context, however, the overarching relevance inquiry remains whether the evidence, taken collectively, establishes a non-speculative connection between the alternate suspect and the charged crime. Contrary to the court of appeals' analysis in *Muniz*, we have not established separate tests for the admissibility of other acts evidence based on whether the evidence pertains to an alternate suspect's motive or opportunity or, instead, to identity.

### 3. Hearsay Statements

¶ 41 Where a defendant seeks to introduce an alternate suspect's statements or confession, evidentiary rules regarding hearsay come into play. Relevant here, CRE 804(b)(3) permits the introduction of a hearsay statement of an unavailable declarant that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency ... to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness.

¶ 42 A trial court must determine whether the alternate suspect's statements meet the requirements of CRE 804(b)(3) or any other applicable hearsay exception. Even assuming the statements are admissible under the rules governing hearsay, the court must still determine whether the statements, along with the other proffered alternate suspect evidence, establish the requisite non-speculative connection tying the alternate suspect to the charged crime.

### 4. CRE 403 Analysis

¶ 43 Even relevant alternate suspect evidence may be excluded if its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. CRE 403; *Flowers,* 644 P.2d at 920. In this context, the most likely concern will be the confusion of the issues or misleading the jury, or considerations of undue delay. *See Salazar,* ¶ 27, 272 P.3d at 1074–75 (concluding that the danger of confusing the issues and misleading the jury substantially outweighed the minimal probative value, if any, of the alternate suspect evidence); *Flowers,* 644 P.2d at 920 (agreeing with the prosecution that the evidence of the alternate suspect's other crimes would tend to confuse the issues in the case before the jury and unduly delay the trial).

¶ 44 In balancing probative value against the countervailing policy considerations of CRE 403, an item of evidence should not be viewed as an island. *People v. Saiz,* 32 P.3d 441, 446 (Colo.2001). The probative worth of any particular bit of evidence is affected by the scarcity or abundance of other evidence on the same point. *Id.* "Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *Rath,* 44 P.3d at 1043. To show an abuse of discretion for exclusion of relevant alternate suspect evidence, a defendant "must establish that, under the circumstances, the trial court's decision was 'manifestly arbitrary, unreasonable, or unfair.' " *People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995) (quoting *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993)).

## V. Conclusion

¶ 45 Neither the court of appeals nor the trial court properly analyzed the admissibility of the alternate suspect evidence in this case. Because the trial court is in the best position to evaluate this evidence under the framework established in this opinion, we make absolute our rule to show cause and

remand this case to the trial court for further proceedings consistent with this opinion.