**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
United States Court of Appeals
Tenth Circuit

**April 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

RAYMOND CANO,

    Petitioner - Appellant,

v.

DEAN WILLIAMS, Executive Director,
C.D.O.C.; THE ATTORNEY GENERAL
OF THE STATE OF COLORADO,

    Respondents - Appellees.

No. 21-1214
(D.C. No. 1:20-CV-00257-DDD)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **KELLY**, and **McHUGH**, Circuit Judges.
_____

Raymond Cano, a Colorado state inmate proceeding pro se, seeks a certificate of

appealability to challenge the district court's denial of his application for relief under 28

U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring COA to appeal final order in a

habeas proceeding in which the detention complained of arises out of process issued by a

state court). We deny Mr. Cano's application for a COA and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Mr. Cano was convicted by a jury on one count of first-degree murder for a gang-related stabbing and sentenced to life in prison without the possibility of parole. In 2000 Mr. Cano's conviction was affirmed on direct appeal by the Colorado Court of Appeals. The Colorado Supreme Court denied his petition for writ of certiorari. Mr. Cano sought state postconviction relief based on several claims of ineffective assistance of counsel, including that trial counsel was operating under a conflict of interest arising from simultaneous representation of a potential witness. His case reached the Colorado Supreme Court, which remanded for further consideration of Mr. Cano's conflict-of-interest claim. On remand the trial court denied relief, the Colorado Court of Appeals affirmed in 2018, and the Colorado Supreme Court denied review. Mr. Cano then filed the present application under § 2254 with the United States District Court for the District of Colorado, which denied relief and declined to issue a COA.

In his application to this court for a COA, Mr. Cano seeks review of four claims: (1) violations of his Sixth Amendment right to confrontation; (2) ineffective assistance of counsel, including his conflict-of-interest claim; (3) a violation of his right to a fair trial by the trial court's refusal to grant a continuance shortly before trial; and (4) a violation of his right to a fair trial by prosecutorial misconduct in closing argument.

## II.    ANALYSIS

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or,

2

for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See*

3

*id.* Rather, "[i]n order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (internal quotation marks omitted). To prevail, "a litigant must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (ellipsis and internal quotation marks omitted).

In addition, AEDPA establishes a deferential standard of review for state-court factual findings. "AEDPA . . . mandates that state court factual findings are presumptively correct and may be rebutted only by 'clear and convincing evidence.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(e)(1)). Further, the Supreme Court has held that review under § 2254(d)(1), just as under § 2254(d)(2), "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see id.* at 185 n.7.

Often overlooked is that the applicant must also show that he is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This is a separate requirement for relief. *See Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018). Thus, an application for relief under § 2254 may be granted only "to state prisoners who currently are being held in violation of an existing constitutional right, not to inmates who at one point might have been able to show that under a since-overruled Supreme Court or lower court precedent they would have been entitled to relief." *Id.* (brackets and internal quotation marks omitted).

4

We deny Mr. Cano's request for a COA as reasonable jurists could not debate that denial of relief was proper.

### A.     Confrontation Clause

We first address Mr. Cano's claim that various statements presented at his trial violated the Confrontation Clause. We conclude that the district court's determination that there was no violation of the Confrontation Clause under current law is not debatable.[1] Several components of his claim can be disposed of summarily. First, defense objections were sustained with respect to several challenged statements. "The assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue." *Tennessee v. Street*, 471 U.S. 409, 415 n.6 (1985). Thus, there was no evidence of those statements for the jury to consider. Second, one statement was made by Mr. Cano himself, but the Confrontation Clause imposes no restriction on the use of a defendant's own statements. *See United States v. Brinson*, 772 F.3d 1314, 1320–21 (10th Cir. 2014). Third, Mr. Cano challenges testimony regarding

---

[1] After the Colorado Court of Appeals adjudicated Mr. Cano's Confrontation Clause claim in 2000, the United States Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford* the Court overruled *Ohio v. Roberts*, 448 U.S. 56 (1980), which had interpreted the Confrontation Clause to "permit the admission of out-of-court statements by an unavailable witness, so long as the statements bore adequate indicia of reliability." *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (internal quotation marks omitted). Under *Crawford* the Confrontation Clause analysis is directed at testimonial hearsay, the admissibility of which does not depend on rules of evidence or "amorphous notions of 'reliability.'" *Crawford*, 541 U.S. at 61. The Confrontation Clause "prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Clark*, 576 U.S. at 243 (quoting *Crawford*, 541 U.S. at 54). Relying upon 28 U.S.C. § 2254(a), the district court applied current law—the *Crawford* framework—to the statements challenged by Mr. Cano.

the victim's reaction to a phone call before the stabbing. But "[t]he Confrontation Clause applies only to testimonial hearsay, which typically involves a solemn declaration or affirmation . . . that a reasonable person in the position of the declarant would objectively foresee . . . might be used in the investigation or prosecution of a crime." *United States v. Otuonye*, 995 F.3d 1191, 1206 (10th Cir. 2021) (citation and internal quotation marks omitted). Thus, the challenged testimony was not testimonial hearsay and therefore raises no Confrontation Clause issue.

There remains Mr. Cano's challenge to testimony by two law-enforcement officers relating to another possible suspect, Victor Magana. One detective testified during redirect examination that he had been told by Mr. Magana's cousin that Mr. Magana was living in Los Angeles. The detective had just acknowledged on cross-examination that Mr. Magana was the person whom the victim's girlfriend identified in an initial photo array as looking most like the person who stabbed the victim—though notably the array did not include Mr. Cano. Another detective testified about receiving information from California law-enforcement agencies. The trial court prohibited the detective from testifying that Mr. Magana was in California or Mexico at the time of the murder because that testimony would be based on hearsay. But the court did allow the detective to testify about his own actions taken in reliance on information he received, and the detective testified that after receiving the California information he thought it unnecessary to conduct further investigation regarding Mr. Magana.

The district court ruled that there was no Confrontation Clause violation because the challenged testimony was not hearsay, since it was not offered for the truth of the

6

implicit assertion that Mr. Magana "had an alibi for the crime." R., Vol. 1 at 498; *see Crawford v. Washington*, 541 U.S. 36, 59 n.7 (2004) ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *United States v. Edwards*, 782 F.3d 554, 560 (10th Cir. 2015) ("The [Confrontation] Clause does not bar the use of statements (even testimonial statements) that are not hearsay, *i.e.*, that are offered for purposes other than establishing the truth of the matter asserted."). Rather, the statements were offered to explain why the detectives chose not to pursue Mr. Magana as a suspect.[2] *See United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987) ("[O]ut of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken."). No reasonable jurist could disagree with the district court's denying relief to Mr. Cano on his Confrontation Clause claim.

## B.     Ineffective Assistance of Counsel

Mr. Cano asserts that trial counsel was ineffective in (1) failing to conduct adequate investigations to discover certain alibi witnesses; (2) not calling defense witnesses who would have testified that the prosecution witnesses' testimony was fabricated; (3) not obtaining gang and toxicology experts and not communicating

---

[2] We note that the state court rejected this claim on the same basis: "testimony by both detectives was admissible as non-hearsay foundation testimony to explain actions taken by the detectives in their investigation of [Mr. Magana] as an alternate suspect." R., Vol. 1 at 171. Thus, the district court's denying relief on this claim was also required by 28 U.S.C. § 2254(d)(1), as no reasonable jurist could find that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."

effectively with Mr. Cano; and (4) laboring under a conflict of interest through multiple representation.[3]

A defendant claiming ineffective assistance of counsel must show both deficient performance and prejudice: "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). It is unnecessary to address the performance prong if the defendant makes an insufficient showing of prejudice. *See id.* at 697. There is no debating the district court's conclusion that Mr. Cano was not entitled to relief on his first three ineffective-assistance claims. Even if counsel was deficient regarding these matters, there is nothing in the state-court record showing that Mr. Cano was prejudiced thereby. The district court could not speculate about the possibility that unnamed witnesses might have provided an alibi[4] or impeached a prosecution witness,[5]

---

[3] He also claims that trial counsel coerced him into waiving his preliminary hearing. But in the district-court proceedings, Mr. Cano withdrew this claim and therefore the court properly declined to examine it.

[4] Mr. Cano asserts that his "sister was with him when the stabbing occurred, proving that he was not even at the party when the victim was killed." Aplt. Br. at 12. But his sister was not identified as an alibi witness in the state-court postconviction proceedings.

[5] In his brief in support of his petition for state postconviction relief, Mr. Cano did name several witnesses who were not called to testify and who were purportedly at the house where the stabbing occurred. He argued that these witnesses could have impeached the testimony of Esmeralda Limas, a prosecution witness who testified that she was alone in a bathroom near the time of the stabbing, was walking out when she heard screaming, and saw Mr. Cano holding a knife shortly thereafter. Mr. Cano alleged that three of these witnesses claimed to have been in the bathroom when the stabbing occurred and a fourth said that she was in the basement with Ms. Limas at the time of the stabbing. Mr. Cano

that an expert would have provided favorable testimony, or that better communication with Mr. Cano would have led to a different outcome.

As for the conflict-of-interest claim, Mr. Cano complains that his public defender labored under a conflict because the public defender's office simultaneously represented Sergio Aguilar,[6] who was present at the party where the stabbing occurred, and that his attorney "did not investigate or even submit that Sergio Aguilar was an alternate suspect." Aplt. Br. at 13. In arguing that there was a Sixth Amendment violation, Mr. Cano has relied upon *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which requires him to "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. The Colorado Court of Appeals rejected Mr. Cano's claim on the ground that there was no adverse effect on his lawyer's performance, ruling that Mr. Cano's alternate-suspect theory could not have been presented to the jury under

---

did not identify these specific witnesses in the district court or in his brief to this court— nor has he presented any meaningful argument on this issue—but he would be unable to make an adequate showing of prejudice in any event. Defense counsel elicited on cross-examination that Ms. Limas's testimony at trial contradicted what she reported on the night of the stabbing: Ms. Limas told a police officer that she was in the basement when she heard screaming and she said nothing to the officer about seeing a man holding a knife. Moreover, the material portion of Ms. Limas's testimony—that she saw Mr. Cano holding a knife in the kitchen after the stabbing—would not have been contradicted by testimony from other witnesses that she was not in the bathroom at the time of the stabbing.

[6] The Colorado Court of Appeals described the conflict as follows: "Aguilar was arrested for a different matter five days before [Mr.] Cano's trial, and the public defender entered an appearance for [Mr.] Aguilar on the second day of [Mr.] Cano's trial. Thus, as the postconviction court pointed out, the overlap in representation was *de minimis*." R., Vol. 1 at 359. It also found that Mr. Cano's attorney "remained unaware until after [Mr.] Cano's trial had concluded that a public defender from the [same] office had entered an appearance on behalf of [Mr.] Aguilar in the unrelated case." *Id.* at 353.

Colorado's rules of evidence because he "failed to establish a nonspeculative connection between [Mr. Aguilar] and the crime charged." *Id.* at 365; *see People v. Elmarr*, 351 P.3d 431, 439 (Colo. 2015). The state court found that there was no "evidence of some direct act connecting [Mr.] Aguilar to the crime." R., Vol. 1 at 367.

No reasonable jurist could disagree with the federal district court's determination that Mr. Cano is not entitled to relief on his conflict-of-interest claim, as "Mr. Cano fail[ed] to demonstrate [that] the state court's rejection of his adverse effect arguments 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 517 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

### C.     Denial of Continuance

Mr. Cano claims that he was denied a fair trial and effective assistance of counsel because the trial court denied defense counsel a continuance that she requested the Friday before trial. The main grounds for the continuance were that (1) the prosecution had provided late and incomplete information about the criminal histories of several prosecution witnesses and (2) testing had not yet been completed on knives from the crime scene. With respect to the criminal-history disclosures, the state court found no material prejudice given that the witnesses' histories were elicited through trial testimony. As for the testing on the knives, the state court noted that the knives contained no fingerprints or blood that could exculpate Mr. Cano; at most, if one of the knives found at the crime scene was identified as the likely weapon, that evidence could have been used to impeach witnesses who testified about the characteristics of the knife and its

10

disposal. Moreover, the state court found that the prosecution had not committed any intentional discovery violations and that the prosecution was reasonably concerned that a delay in trial would cause it to lose witnesses since some of the gang-member witnesses had expressed a desire to move elsewhere.

The federal district court denied relief on this claim, noting the broad discretion invested in trial courts with respect to continuances and determining that Mr. Cano had not demonstrated that the state court's ruling "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 492 (quoting *Richter*, 562 U.S. at 103). No reasonable jurist could disagree with the district court's disposition of this claim.

### D.     Prosecutorial Misconduct

Finally, Mr. Cano argues that he was denied a fair trial by the prosecutor's improper closing argument. The only comment that was objected to at trial was the prosecutor's statement in his rebuttal argument that defense counsel "says the real killer is either out there or on the stand but it isn't her client. The real killer is out there. Have you heard any evidence he is out there[?]" *Id.* at 499–500 (internal quotation marks omitted). The trial court did not sustain the objection but it did remind the jury that this was merely argument and that it was bound to follow the court's instructions. Defense counsel did not object to the remaining three statements that Mr. Cano challenges: (1) a statement that "it is uncontroverted who did the stabbing"; (2) a comment that although the victim's girlfriend may have provided inconsistent descriptions of the assailant's clothing to the police, she was "not lying" and was "trying to assist the police officer in

11

the investigation that has happened within minutes of seeing someone she loved very much just savagely killed in front of her"; and (3) responding to defense counsel's argument that police had failed to investigate other individuals as suspects, the prosecutor noted that one such individual had tried to provide medical assistance to the victim and then asked the jury whether that was "the act of someone who was involved in this bizarre conspiracy that the defense is hoping that you buy?" *Id.* at 174–75 (internal quotation marks omitted).

The district court denied relief on this claim, ruling that the state court did not unreasonably apply the standard set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), which states that the relevant inquiry is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks omitted). The district court noted that the trial court properly instructed the jury that Mr. Cano was presumed innocent, the prosecution bore the burden of proof, and no inference could be drawn from Mr. Cano's silence. The district court also considered that the trial court provided a cautionary instruction after the first statement (the one to which a defense objection was made) and that defense counsel did not object to the other statements. We conclude that reasonable jurists could not debate the correctness of the district court's ruling.

## III.    CONCLUSION

We **DENY** Mr. Cano's application for a COA, **DENY** his motion to proceed in forma pauperis, and **DISMISS** this matter.

Entered for the Court


Harris L Hartz
Circuit Judge