23CA0669 Peo v Estrada 09-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0669
Arapahoe County District Court No. 21CR2207
Honorable Darren L. Vahle, Judge

The People of the State of Colorado,

Plaintiff-Appellee

v.

Luis Martin Estrada,

Defendant-Appellant.

JUDGEMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Greg D. Rawlings P.C., Greg D. Rawlings, Denver, Colorado, for Defendant-Appellant

¶ 1    A jury convicted defendant, Luis Martin Estrada, of first degree murder, four counts of attempted first degree murder, two counts of first degree assault, and three counts of menacing.[1]  He appeals the judgment of conviction entered on the jury's verdicts.  In particular, he contends that the trial court abused its discretion by denying his motion to admit evidence of an alternate suspect's prior bad acts.  And he contends that this ruling "hamstr[u]ng" his defense by denying him the ability to present an alternate suspect defense and thereby depriving him of a fair trial.  We reject these contentions and affirm.

## I.    Background

¶ 2    In October 2021, a group of friends held a birthday party in a hotel suite.  Estrada came to the party with his girlfriend.  Estrada and his girlfriend asked the host of the party if Estrada's friend, Ruben Mejia-Soto, could also come to the party.  The host said yes, and Mejia-Soto arrived shortly thereafter.

¶ 3    Witnesses all recalled Mejia-Soto wearing gray clothing and variously recalled Estrada wearing black clothing and yellow shoes,

---

[1] In addition, Estrada pleaded guilty to one count of possession of a weapon by a previous offender.

or black and red clothing and yellow shoes. Surveillance footage from the hotel showed Estrada wearing black clothing and yellow shoes, and a detective who later contacted him in the parking lot of the hotel likewise observed that he was wearing a black shirt, black pants, and yellow shoes.

¶ 4 At the party, Estrada and Mejia-Soto started "acting like they wanted a fight, like they were trying to find problems." They calmed down, but several guests of the party saw Estrada "flash" or pull out a pistol that was tucked in his waistband. One guest initially saw Mejia-Soto with the gun. [But the guest then saw Estrada take the gun from Mejia-Soto.

¶ 5 One of the guests told Estrada to stop waving the gun around because it might have a round in the chamber and Estrada was drunk. Estrada replied, "Who doesn't have one in the chamber?" He then pulled a magazine from his pocket and inserted it into the gun.

¶ 6 Both Estrada and Mejia-Soto told another person that they did not know anyone at the party and were looking for a fight. At one point, Estrada pointed the gun at other guests. The host and other guests told Estrada to leave. When he and Mejia-Soto refused, the

host and several guests pushed them out of the room.  The host locked the door and, moments later, heard gunshots.

¶ 7     As Estrada and Mejia-Soto were being pushed out of the party, five partygoers were approaching the party from the hallway. Estrada was "banging on the door."  One of the partygoers, Eric DeSantiago, told Estrada that he was "pretty sure that [those still inside the hotel room] could hear them."  In response, Mejia-Soto advanced on and hit DeSantiago.  Estrada "pulled out a gun," pointed it at DeSantiago, and told him to leave.  He then fired several shots through the hotel room door.  Estrada also pointed the gun at the remaining partygoers in the hallway, following some of them into a stairwell, waving the gun in their faces, and saying, "Who wants it next?"

¶ 8     Estrada and his girlfriend left the hotel and were getting into their car when police officers arrested them.  Mejia-Soto got into a separate car but was also apprehended and arrested.

¶ 9     Four people inside the hotel room suffered gunshot wounds. One of them died as a result of a gunshot wound to his chest. Police located a gun, which matched a shell found in the hotel, under a vehicle in the hotel parking lot.

¶ 10    Police performed gunshot residue tests on Estrada and Mejia-Soto. Estrada's test came back positive for gunshot residue particles. But "[n]o particles of gunshot residue were found" in Mejia-Soto's test. DNA analysis of the gun and magazine included Mejia-Soto as a contributor on both; Estrada and his girlfriend were inconclusive contributors on the gun and excluded as contributors on the magazine.

## II.    Alternate Suspect and Other Act Evidence

¶ 11    Before trial, Estrada notified the trial court that he intended to pursue an alternate suspect defense. He identified Mejia-Soto as the alternate suspect. As part of his planned defense, Estrada sought to offer evidence of "Mejia-Soto's pending case" relating to this matter, and "the plea offer he accepted from the People." And he sought to offer evidence that, roughly five months before the events underlying this case, "Mejia-Soto brandished a firearm from his front pocket while at a house party and fired it multiple times." This latter evidence was admissible, the defense argued, to show Mejia-Soto's common plan or scheme of carrying guns "at parties" and "then fir[ing] them."

4

¶ 12    The court ruled on these issues at a pretrial hearing.  As to the evidence of Mejia-Soto's behavior in this case, the court stated the following:

> [The defense] intend[s] to introduce the behavior of Mr. Mejia Soto, the Codefendant, his possession of the gun, his behavior during the party, the fact that he had the gun at some point, his DNA on the gun, and they intend to bring those in to show that he is [an] alternate suspect that he is the shooter.

The court found that this was "simply evidence" of Mejia-Soto as an alternate suspect, which "can be presented . . . by the [d]efense."

¶ 13    As to the other act evidence, defense counsel made an offer of proof, which included a news article and information contained in the prosecution's discovery indicating that an eyewitness who was at both parties described Mejia-Soto as "the shooter" at the prior party.

¶ 14    The court found that this was "certainly evidence of similar conduct."  But no proof had been offered that "there was a plan to do this repeatedly."  And, the court found, even if it determined a proper purpose for admitting the evidence, it was not independent of the propensity inference that Mejia-Soto was "the kind of guy who fires guns at parties" and "was acting in conformity with that

5

character." Because there was nothing "signatury" — which we take to mean as distinctive enough to suggest that the same person likely committed both acts — about the prior act evidence and this case, the court found, the relevance of the prior act "really comes from propensity." Thus, the court concluded, the test for admitting evidence of the prior act was not met.

¶ 15 During trial, Estrada asked the court to reconsider its ruling. The court again denied the request to admit this prior act evidence. The court cited *People v. Bueno*, 626 P.2d 1167 (Colo. App. 1981), stating that it "laid the foundation for" when other act evidence could be admitted in establishing an alternate suspect defense. The court distinguished *Bueno*, finding that there, the "high similarities" between the prior act and the charged act made it highly likely that the perpetrator of each crime was the same person. Here, however, the court found the evidence of the two acts was not sufficiently similar and therefore the prior act was not relevant:

> Here, there's a party, there's a gun, and shots
> are fired. Those are the same. But those are
> pretty generic facts, and they are not the kind
> of facts that are there in *Bueno*. The Court
> simply does not find that — even if the Court
> were to allow in evidence that Mr. Mejia was at
> a party five months earlier, that he had a gun,

6

that he fired the gun, that that has any
relevance towards whether he is the shooter in
this case except for the propensity inference.

The court went on to say that the only way for the prior act to be relevant is for the jury to think, "Well, he shot a gun at a party before. He's probably a party-shooting kind of guy, and he probably did it again. This is evidence of character and that he acted in conformity with that character." Unlike *Bueno* and "the other cases the Court is familiar with where this comes in," this is not a "signature" or "individual characteristic crime." Thus, the court found that the other act evidence was not relevant and that any relevance would be outweighed by the danger of confusion of the issues.

¶ 16    Estrada asserts that the trial court's evidentiary ruling was error. We disagree.

### A.    Standard of Review and Controlling Law

¶ 17    We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Elmarr*, 2015 CO 53, ¶ 20. A court abuses its discretion if, among other things, its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 18    A criminal defendant is constitutionally entitled "to all reasonable opportunities to present evidence that might tend to create doubt" as to his guilt. *Id.* at ¶ 26 (citing *Bueno*, 626 P.2d at 1169). However, the right to present a defense is constrained by well-established rules governing the admissibility of evidence. *Id.* at ¶ 27. Alternate suspect evidence must be relevant. *Id.* But even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (quoting CRE 403).

¶ 19    When evidence "concerns other acts by the alternate suspect, a court must look to whether all the similar acts and circumstances, taken together, support a finding that the same person probably was involved in both the other act and the charged crime." *Id.* at ¶ 23. CRE 404(b) principles guide this analysis. *Id.* However, concerns regarding prejudice to the defendant that gave rise to the common law rule underpinning CRE 404(b) do not exist when the defendant offers other acts evidence of an alternate suspect. *Id.* at ¶ 36. Nonetheless, nothing in Colorado's caselaw

"suggests that evidence of an alternate suspect's other acts is admissible purely for the inference that the alternate suspect acted in conformity with his bad character." *Id.* at ¶ 39. Other act evidence that is insufficiently "distinctive or unusual" will typically not support a finding that the same person probably committed both acts. *Id.*; *People v. Salazar*, 2012 CO 20, ¶ 26.

## B. Analysis

¶ 20 We cannot conclude that the trial court abused its discretion in excluding evidence of Mejia-Soto's prior act. That is, the court's determination that the evidence of the prior act was "pretty generic" and therefore not "signature" or uniquely "characteristic" was not manifestly arbitrary, unreasonable, or unfair. Given that the prior act evidence was not distinctive or unusual, the court did not abuse its discretion by determining that the only relevance of the prior act was for the inference that the alternate suspect acted in conformity with his bad character, and therefore inadmissible. *Elmarr*, ¶ 39; *see People v. Trusty*, 53 P.3d 668, 675 (Colo. App. 2001) (concluding that no abuse of discretion occurred in exclusion of alternate suspects' criminal histories where the defendant "proffered no evidence indicating any distinctive or unusual similarities between

9

the offense with which he was charged and the prior offenses of [alternate suspects]"); *People v. Ornelas*, 937 P.2d 867, 872 (Colo. App. 1996) (same). Under these circumstances, the danger of confusion of the issues was high.

¶ 21    In any event, we agree with the People that, even if we assume evidentiary error, such error was harmless. An evidentiary error precluding a defendant from presenting evidence may be of constitutional magnitude "only where the defendant was denied virtually his [or her] only means of effectively testing significant prosecution evidence." *People v. Brown*, 2014 COA 155M-2, ¶ 6, (*quoting Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009)). Otherwise, reversal is required only if the error "substantially influenced the verdict or affected the fairness of the trial." *Id.*

¶ 22    Here, the trial court did not preclude Estrada from cross-examining Mejia-Soto or arguing his theory of the case. Thus, he was not denied his only means of testing the prosecution's evidence. Further, the evidence of Estrada's guilt was overwhelming. *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986). Four partygoers testified that the man dressed in black — undisputedly Estrada — was the person who shot repeatedly at the door to the hotel room and

menaced some of those who were in the hallway. Further, the gunshot residue test results corroborated those witness accounts that Estrada was the shooter. Under these circumstances, we cannot say that the court's decision to exclude prior act evidence of the alternate suspect substantially influenced the verdict or fairness of the trial.

## III.  Disposition

¶ 23    The judgment is affirmed.

JUDGE FREYRE and JUDGE LUM concur.