**Jesse Boyd HAMRICK, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 79SC109.**

Supreme Court of Colorado.

March 2, 1981.

Criswell & Patterson, John E. Myles, Englewood, for petitioner.

J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., David K. Rees, Asst. Atty. Gen., Appellate Section, Denver, for respondent.

LEE, Justice.

Defendant, Jesse Boyd Hamrick, was convicted of first-degree felony murder (section 18–3–102(1)(b), C.R.S. 1973 (1978 Repl.

Vol. 8)), second-degree murder, intent to commit serious bodily injury (section 18–3–103(1)(b), C.R.S. 1973),[1] aggravated robbery (section 18–4–302(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8)), and theft (section 18–4–401(1), C.R.S. 1973 (1978 Repl. Vol. 8)). We granted certiorari to review the decision of the court of appeals affirming the convictions. *People v. Hamrick*, Colo.App., 624 P.2d 1333 (1979). We affirm the court of appeals.

Jean Hansen Fernandez, originally charged as a co-defendant, entered into a plea agreement and testified for the People against the defendant Hamrick. She related the following events which led up to the homicide. On January 14, 1977, at approximately 7:30 p. m., the defendant and his traveling companion, Fernandez, went to the trailerhouse of Kenneth Howard Baumert in Aurora with the ostensible purpose of borrowing money from Baumert. Baumert invited Fernandez and the defendant into the trailer, where the three of them talked, listened to music, and drank whiskey for a considerable length of time. While Baumert's attention was diverted, the defendant went to the bedroom and returned to the living room carrying a club. Without apparent provocation, the defendant began beating Baumert on the head with the club. He continued striking Baumert with such forceful blows that the club broke into pieces. When Baumert was rendered helpless and was sprawled on the floor, the defendant continued the vicious assault, kicking Baumert about the body until he was rendered unconscious. The defendant then robbed him of his wallet and watch. At this point, Fernandez left the trailer. Defendant followed a short while later but returned to the trailer to retrieve Fernandez' coat. The wallet contained seventy-five dollars and the watch was later sold for five dollars. The victim's body was found by police five days later. The defendant and Fernandez, who fled the scene in Fernandez' automobile, were arrested in Texas in February 1977.

---

1. This section was repealed July 1, 1977, Colo. Sess.Laws 1977, section 67, ch. 224 at 971.

Medical experts testifying for both sides concluded that the immediate cause of death was heart failure due to an epileptic seizure. The People's pathologist, who performed the autopsy on the victim, testified that the victim died of cardiac arrest during an epileptic seizure initiated by multiple trauma to the head. He explained that the neurogenic shock of the assault, together with the excessive loss of blood from the head wounds, initiated the seizure resulting in the cardiac arrest. This testimony was in part disputed by opinions offered by defendant's expert witnesses which held that there were other possible causes of the seizure and the cardiac arrest, including the failure of the victim, who had a history of epilepsy, to take anti-convulsant medication, and the ingestion of alcohol.

The jury chose to believe the prosecution's witnesses and the defendant was found guilty of felony murder and the other offenses as previously set forth. We find no prejudicial error and therefore affirm the judgment of the court of appeals.

Defendant urges this court to reverse the court of appeals on three grounds. First, the defendant argues that during the jury selection phase of the case he was seen in handcuffs by prospective jurors and that because of the potential for prejudice to his case the court should have granted his motion for a mistrial. Defendant next argues that a mistrial should have been declared when the People's witness, Fernandez, stated while under cross-examination that she had taken a lie detector test. Finally, defendant urges that the instructions to the jury were insufficient on the issue of causation.

## I.

After a luncheon recess during the jury selection phase of the trial, the defendant, who was in handcuffs, was escorted by a deputy sheriff from the jail, up a stairway and across a hallway into the courtroom where he was then uncuffed. There were approximately twenty-five prospective jurors in the hallway, milling around waiting for the courtroom to be unlocked. Some of the jurors may have seen the defendant handcuffed as he crossed the hallway. However, none of the prospective jurors were present in the courtroom when the defendant was taken into it.

After learning of this incident, defense counsel moved for a mistrial on the grounds that the defendant's presumption of innocence had been prejudiced in the eyes of some of the ultimate jurors. The defendant was offered the opportunity to interrogate the prospective jurors concerning possible prejudice resulting from this incident. He chose not to do so. The motion for mistrial was denied.

 The transportation of prisoners from the jail to the courtroom often requires that prisoners be shackled in the interest of preventing escape and public safety. However, reasonable efforts should be made to prevent prisoners under such restraints from being seen by prospective or actual jurors. *People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). In the present case, the record indicates that the court and the sheriff were acutely aware of security problems in transporting prisoners from the jail to the courtrooms because of shortcomings in the design of the court facilities.[2] They had conferred on methods by which defendants could be kept out of the sight of jurors when handcuffed and being brought into the courtroom from the jail. In this particular instance, the deputy was following specific written instructions in the route and manner of delivering the prisoner from the jail to the courtroom. It is clear from the record that the momentary exposure of the defendant was inadvertent.

 In *McLean v. People*, 172 Colo. 338, 473 P.2d 715 (1970), this court stated:

---

**2.** In commenting on the problem, the court stated: "There may be worse facilities some-

where in the state but I don't know where they are."

"* * * The appearance of the defendant before the jury in handcuffs is reversible error only when the exposure was unnecessary and prejudicial to the defendant. *Montoya v. People,* 141 Colo. 9, 345 P.2d 1062. In *Scott, supra [Scott v. People,* 166 Colo. 432, 444 P.2d 388 (1968)], we held that it was not unreasonable or unnecessary for a defendant to be handcuffed when being moved to and from the courtroom."

We hold that under the circumstances of this case the momentary, inadvertent exposure of the defendant in handcuffs, outside the courtroom, when being transported from the jail to the court, did not prejudice the defendant's right to a fair trial. No prejudice having been shown, the denial of a mistrial was not an abuse of discretion.

## II.

Defendant further asserts that prejudicial error occurred during the cross-examination of the witness Fernandez by defense counsel. In response to a series of questions relating to the conditions of her plea bargain, she stated that she had taken a lie detector test. Defendant claims this prejudiced him and that he should have been granted a mistrial.

The results of the test were not disclosed to the jury. Prior to her testimony, Fernandez had been warned by the district attorney not to mention the fact that she had taken such a test. The response was characterized by the trial court as a "low key statement," "spontaneously and gratuitously volunteered." She apparently "blurted" it out, the court observed, when she became "flustered" by vigorous cross-examination concerning her credibility as a witness.

■ *The granting of a motion for mistrial is within the sound discretion of the trial court. The prejudice asserted must be so substantial that the effect on the jury cannot be remedied by anything less than a mistrial. People v. Goff,* 187 Colo. 103, 530

P.2d 514 (1974). We will not disturb the ruling of the trial court on review unless it is apparent that the trial court abused its discretion. *People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973). The record indicates the trial court carefully appraised the circumstances attending the witness' statement and concluded that there was no substantial prejudice to the defendant. We find no abuse of discretion by the court in denying the motion for mistrial.

## III.

■ Finally, defendant claims error in the refusal of the trial to give the jury instructions tendered by him on the causation issue, as follows:

"Instruction No. 1

"To warrant a conviction for homicide, the death must be the natural and probable consequence of the unlawful act, and not the result of an independent intervening cause in which the accused does not participate, and which he could not foresee. If it appears that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such supervening cause is a defense to the charge of homicide."

"Instruction No. 2

"To warrant a conviction for murder of any degree, you must be convinced beyond a reasonable doubt that the death was caused by an unlawful act of the accused and that the death was not caused by some other condition or circumstance over which the accused had no control."

We find no error in the refusal to give these instructions.

■ To instruct the jury on supervening cause, as requested by the defendant in

his tendered instructions, would have been incorrect inasmuch as the facts of the case did not involve a supervening cause. As defendant's tendered instruction No. 1 stated, a supervening cause is an independent intervening cause in which the defendant did not participate and which he could not foresee. *See People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). For the defendant to be responsible for the death of a victim, the death must be the natural and probable consequence of his unlawful conduct.

> "* * * [I]t is not indispensible to a conviction that the wounds be fatal and the direct cause of death. It is sufficient that they cause death indirectly through a chain of natural effects and causes unchanged by human action. * * *" *Drury v. Burr*, 107 Ariz. 124, 483 P.2d 539 (1971).

The defendant must take his victim as he finds him, and it is no defense that the victim is suffering from physical infirmities. *Swan v. State*, 322 So.2d 485 (Fla. 1975). In *Swan, supra*, the defendant had beaten the victim, an elderly woman, in the course of a burglary of her home. The victim was discovered the next day injured but alive. She died seven days later. The victim had previously suffered a heart attack, stroke, arteriosclerosis and, apparently, diabetes. Defendant tried to show that if the victim had been in good physical condition she would have survived the attack. The court held:

> "* * * Appellant can not be excused from guilt and punishment because his victim was weak and could not survive the torture he administered. If the jury could have concluded reasonably that the wounds resulting from the beating administered by the Appellant and his co-defendant caused or materially contributed to the victim's death, it was proper to find Appellant guilty." *Swan, supra*.

In the present case, defendant attacked an epileptic who had consumed a considerable amount of whiskey and had failed to take his prescribed medication.[3] The question for the jury's determination was whether the injuries inflicted by the defendant began a chain of events which in their natural and probable consequences caused the victim's death. *See Dumas v. State*, 159 Ala. 42, 49 So. 224 (1909); *Swan v. State, supra; Morris v. State*, 322 So.2d 489 (Fla.App.1975); *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966); *State v. Durham*, 156 W.Va. 509, 195 S.E.2d 144 (1973); *State v. Velsir*, 61 Wyo. 476, 159 P.2d 371 (1945); and *see Annot.* 65 A.L.R.3d 283, § 9. The jury resolved this question adversely to the defendant and the record of evidence clearly supports the guilty verdict.

The judgment is affirmed.

---

**3.** There was some evidence that the victim also suffered from diabetes and arteriosclerosis.