1
 2025 CO 18 In Re The People of the State of Colorado, Plaintiff: v. Patrick L. Beverly, II., Defendant: No. 24SA258
Supreme Court of Colorado
May 5, 2025
 2
 
          
 Original Proceeding Pursuant to C.A.R. 21 El Paso County
 District Court Case No. 24CR1183 Honorable Marcus S. Henson,
 Judge.
 
 
          
 Attorneys for Plaintiff: Michael J. Allen, District Attorney,
 Fourth Judicial District Lance Johnston, Deputy District
 Attorney Doyle Baker, Senior Deputy District Attorney
 Colorado Springs, Colorado.
 
 
          
 Attorneys for Defendant: The Griffin Law Firm, P.C. William
 Griffin Colorado Springs, Colorado.
 
 
          
 Attorneys for Respondent El Paso County District Court:
 Philip J. Weiser, Attorney General
 
 3
 
          Joseph
 G. Michaels, Assistant Solicitor General Denver, Colorado.
 
 
          
 MARQUEZ, CHIEF JUSTICE delivered the Opinion of the Court, in
 which HOOD, JUSTICE, GABRIEL, JUSTICE, HART, JUSTICE and
 SAMOUR, JUSTICE joined. BOATRIGHT, JUSTICE joined by
 BERKENKOTTER, JUSTICE dissented.
 
 
          en
 banc
 
 
          
 ORDER DISCHARGED
 
 4
 
          
 MÁRQUEZ, CHIEF JUSTICE.
 
 
          ¶1
 In 2016, fentanyl surpassed heroin as the drug responsible
 for the most opioid-related deaths nationwide. Colo.
 Dep't of Law, Social Media, Fentanyl & Illegal
 Drug Sales: A Report from the Colorado Department of
 Law, 31 (2023),
 https://coag.gov/app/uploads/2023/03/Colorado-AG-Report-Social-Media-Fentanyl-Illegal-Drug-Sales.pdf
 [https://perma.cc/W8RD-38AY]. By 2021,
 fentanyl-which is roughly fifty times more potent than
 heroin-accounted for two-thirds of drug overdose deaths in
 the United States. Id. That year, roughly half of
 the overdose deaths in Colorado were related to this
 synthetic opioid. Id. at 33.
 
 
          ¶2
 In 2022, the General Assembly responded to these trends by
 enacting H.B. 22-1326. Ch. 225, sec. 1, 2022 Colo. Sess. Laws
 1625, 1625-26. Among other things, this bill enhanced the
 penalties for those convicted of distributing drugs where the
 offense is "the proximate cause of the death of another
 person who used or consumed" the substance. Ch. 225,
 sec. 3, § 18-18-405(2)(a)(III)(A), 2022 Colo. Sess.
 Laws, 1625, 1628-29. Under the provisions of H.B. 22-1326,
 defendants charged with fentanyl distribution under these
 circumstances face sentences that are four times longer than
 the ordinary presumptive range for fentanyl distribution
 offenses. See § 18-1.3-401.5(2)(a), C.R.S.
 (2024).
 
 5
 
          ¶3
 In this original proceeding under C.A.R. 21, we are asked to
 determine whether evidence of a drug purchaser's suicidal
 intent may be relevant to determining whether a
 defendant's distribution of fentanyl was the
 "proximate cause" of the drug purchaser's death
 under section 18-18-405(2)(a)(III)(A), C.R.S. (2024). Here,
 Defendant Patrick L. Beverly, II, sold pills containing
 fentanyl to Matthew Bowen, who died after consuming them. A
 coroner later determined that Bowen had died by suicide. The
 People charged Beverly with distribution of less than four
 grams of fentanyl where the distribution was "the
 proximate cause" of Bowen's death. §
 18-18-405(1)(a), (2)(a)(III)(A), (2)(c)(V).
 
 
          ¶4
 Anticipating that Beverly would seek to introduce evidence of
 Bowen's suicidal intent as a defense against section
 18-18-405(2)(a)(III)(A)'s enhanced penalties, the People
 filed a motion in limine to exclude such evidence. The trial
 court denied the People's motion.
 
 
          ¶5
 The People then sought relief in this court under C.A.R. 21,
 contending that the trial court erred by concluding that
 evidence of a drug purchaser's suicide may be relevant to
 section 18-18-405(2)(a)(III)(A)'s proximate-cause
 requirement. We granted the People's petition and issued
 an order to show cause.
 
 
          ¶6
 We now discharge the order for two reasons. First, we
 conclude that the plain language of section
 18-18-405(2)(a)(III)(A) does not preclude a court from
 admitting evidence of a purchaser's suicidal intent in
 taking fentanyl. The General
 
 6
 
 Assembly's use of the specific phrase "proximate
 cause" invokes the well-established legal definition of
 that term. See People v. Rockwell, 125 P.3d 410, 417
 (Colo. 2005). Under that definition, conduct that might
 otherwise constitute a legal or "proximate" cause
 of a person's death is not a proximate cause when an
 "intervening cause" instead causes the death.
 E.g., People v. Stewart, 55 P.3d 107, 121
 (Colo. 2002). An intervening cause is an event in which the
 defendant does not participate, that is not reasonably
 foreseeable, and but for which the person's death would
 not have occurred. People v. Saavedra-Rodriguez, 971
 P.2d 223, 226 (Colo. 1998). We conclude that a drug
 purchaser's suicide by intentional overdose may
 constitute an intervening cause that precludes the
 defendant's act of distributing fentanyl from being the
 proximate cause of a purchaser's fentanyl-related death.
 Because suicide by intentional overdose may serve as an
 intervening cause, and because any factual disputes regarding
 proximate cause are best left for the jury to decide, we hold
 that evidence of a purchaser's suicidal intent may be
 relevant for the purpose of applying section
 18-18-405(2)(a)(III)(A)'s proximate-cause requirement.
 
 
          ¶7
 Second, under the facts of this case, we conclude that the
 trial court did not abuse its discretion when it denied the
 People's motion to exclude evidence of Bowen's
 suicidal intent either as irrelevant under CRE 402 or as
 unduly likely to confuse the jury under CRE 403.
 
 7
 
          I.
 Facts and Procedural History
 
 
          ¶8
 On the morning of August 26, 2023, Bowen sent the following
 text message to his girlfriend:
 
 
 Goodbye . . . I love u so much I really tell the kids that I
 love them so much I hope the best for u. U were my world ur
 so beautiful and amazing. I'm just not strong enough to
 do this anymore. Ur always gonna be in my heart and u will
 always be the greatest thing that ever happened to me. If
 something happens to me my moms number is . . .
 .[1]
 
 
          That
 night, police found Bowen's body in his car with his cell
 phone in his lap and a blue pill partially melted on a piece
 of foil. The police believed the pill to be counterfeit
 oxycodone containing fentanyl. They found no other narcotics
 at the scene.
 
 
          ¶9
 Following an autopsy, the El Paso County Coroner concluded
 that Bowen "died as a result of fentanyl
 intoxication" and that the intoxication was "with
 lethal intent." Accordingly, the coroner listed the
 manner of death as suicide.
 
 
          ¶10
 Police later discovered evidence that Beverly sold Bowen
 ninety dollars' worth of fentanyl pills on the day of
 Bowen's death. The People charged Beverly with one count
 of distributing less than four grams of fentanyl in violation
 of section 18-18-405(1)(a), (2)(c)(V). The People charged the
 offense as a level one drug felony under section
 18-18-405(2)(a)(III)(A), which enhances the sentence
 
 8
 
 associated with certain drug distribution charges if the
 alleged criminal conduct was "the proximate cause of the
 death of another person who used or consumed" the drugs.
 
 
          ¶11
 Anticipating that Beverly would seek to introduce evidence of
 Bowen's suicidal intent to rebut the proximate-cause
 element of section 18-18-405(2)(a)(III)(A), the People filed
 a motion in limine to exclude such evidence. Citing the
 legislative declaration accompanying the General
 Assembly's enactment of section 18-18-405(2)(a)(III)(A),
 the People argued that the General Assembly's intent in
 passing the statute was to impose harsher penalties whenever
 a purchaser dies from ingesting fentanyl that a defendant
 distributed-regardless of whether the overdose was accidental
 or intentional. Acknowledging that the interpretation of
 section 18-18-405(2)(a)(III)(A) presented an issue of first
 impression, the People cited to cases from other
 jurisdictions that reached similar conclusions, albeit in
 different contexts. E.g., United States v.
 Camacho, CR No. 21-00109 SOM, 2024 WL 2089948, at *2 (D.
 Haw. May 8, 2024) (applying a similar federal statute);
 Baker v. State, No. 2469, 2021 WL 3052916, at *1
 (Md. Ct. Spec. App. July 20, 2021) (unpublished opinion)
 (considering a grossly negligent manslaughter charge). The
 People also pointed to Colorado case law on "intervening
 causes," arguing that suicide could not destroy the
 causal link between the distribution of fentanyl and the
 user's death because death-even by
 
 9
 
 suicide-is always a reasonably foreseeable consequence of
 distributing fentanyl. Finally, the People asked the trial
 court to exclude the evidence under CRE 403, arguing that it
 would mislead jurors by focusing their attention on
 Bowen's subjective intent rather than Beverly's
 conduct.
 
 
          ¶12
 In response, Beverly distinguished the case law cited by the
 People as inapposite. He also argued that evidence of
 Bowen's suicidal intent could support a jury instruction
 on intervening cause as a defense to the People's
 allegation that Beverly's conduct was the proximate cause
 of Bowen's death.
 
 
          ¶13
 At a hearing on the People's motion, Beverly called the
 coroner to testify. The coroner discussed the factors he
 considered in concluding that Bowen ingested fentanyl
 "with lethal intent" and, thus, died by suicide. He
 cited Bowen's text message to his girlfriend on the day
 of his death as evidence of "suicidal ideation" and
 noted that Bowen had scars on his arms indicating a history
 of self-harm, which increases the risk that an individual
 will die by suicide. In addition, the coroner described the
 fentanyl concentration in Bowen's blood as
 "exceptionally high" and as "one of the higher
 levels [he had] ever seen." These high blood
 concentrations, the coroner explained, "indicate[] that
 the drug was taken in massive amounts with the intent to harm
 [the drug user]." These toxicological testing results,
 combined with Bowen's text message and the
 
 10
 
 evidence of previous self-harm, led the coroner to conclude
 that Bowen died by suicide.
 
 
          ¶14
 Following the coroner's testimony, the trial court heard
 the parties' oral arguments. The People maintained that
 evidence of a purchaser's intent in taking fentanyl is
 irrelevant to determining proximate cause under section
 18-18-405(2)(a)(III)(A) and that the probative value of such
 evidence is substantially outweighed by the danger that it
 will mislead the jury. Beverly responded that a
 purchaser's conscious choice to greatly increase their
 risk of death by taking a large quantity of fentanyl all at
 once is not a foreseeable consequence of fentanyl
 distribution. Therefore, he continued, such a choice could
 constitute an intervening cause, and evidence of the
 purchaser's intent to make that choice would be relevant
 to the question of proximate cause.
 
 
          ¶15
 The trial court agreed with Beverly and denied the
 People's motion in limine. In a bench ruling, the court
 explained that there was no evidence to suggest that Beverly
 reasonably should have been aware of Bowen's suicidal
 tendencies or of the amount of fentanyl he planned to take.
 The court also found that Beverly could not have reasonably
 foreseen that Bowen, who knew he had purchased fentanyl,
 would "misuse" that fentanyl by taking such a large
 quantity at once. For these reasons, the trial court denied
 the People's motion to exclude
 
 11
 
 evidence of Bowen's suicidal intent, including the text
 message and the coroner's expert opinion.
 
 
          ¶16
 The People then sought relief in this court under C.A.R. 21.
 We issued an order to show cause. We now discharge the order.
 
 
          II.
 Original Jurisdiction
 
 
          ¶17
 Whether to exercise our original jurisdiction pursuant to
 C.A.R. 21 is within our sole discretion. C.A.R. 21(a)(2)
 ("Relief under this rule . . . is a matter wholly within
 the discretion of the supreme court."). But because the
 relief C.A.R. 21 offers "is extraordinary in
 nature," id., the scope of our jurisdiction
 under this rule is "narrow," People v.
 Subjack, 2021 CO 10, ¶ 12, 480 P.3d 114, 117.
 
 
          ¶18
 Given the prevalence of fentanyl in Colorado, the
 interpretation of section 18-18-405(2)(a)(III)(A)
 "raises an issue of first impression that is of
 significant public importance." Subjack, ¶
 13, 480 P.3d at 117. Further, the People have no alternative
 remedy if a jury concludes that Beverly's distribution of
 fentanyl was not the proximate cause of Bowen's death,
 which would preclude imposition of an enhanced sentence.
 See C.A.R. 21(a)(2) (noting that relief "will
 be granted only when no other adequate remedy is
 available"); People v. Elmarr, 2015 CO 53,
 ¶ 19, 351 P.3d 431, 437 (exercising C.A.R. 21
 jurisdiction when "the People have no other adequate
 remedy"). For these reasons, we exercise our
 jurisdiction under C.A.R. 21 to review the trial court's
 ruling.
 
 12
 
          III.
 Analysis
 
 
          ¶19
 We first set forth our standard of review and, in so doing,
 clarify the scope of the question before us. Next, we
 interpret section 18-18-405(2)(a)(III)(A) and hold that
 evidence of a drug-purchaser's suicidal intent may be
 relevant for the purpose of evaluating the statute's
 proximate-cause requirement. Finally, we consider whether the
 trial court abused its discretion by denying the People's
 motion to exclude evidence of Bowen's suicidal intent and
 conclude that it did not.
 
 
          A.
 Standard of Review
 
 
          ¶20
 Because the parties dispute the scope of the question before
 us, they also dispute the standard of review. The People
 argue that we should review the undisputed facts de novo to
 determine whether Beverly's distribution of fentanyl was
 the proximate cause of Bowen's death. In contrast,
 Beverly construes the question as whether the trial court
 abused its discretion by admitting evidence of Bowen's
 suicidal intent. Finally, the trial court asserts that this
 case presents a question of statutory interpretation that we
 should review de novo. We view the question before us as
 consisting of two parts.
 
 
          ¶21
 First, we consider whether evidence of a drug-purchaser's
 suicidal intent is relevant to evaluating the proximate-cause
 requirement of section 18-18-405(2)(a)(III)(A). This is a
 question of statutory interpretation that we review de novo.
 Johnson v. People, 2023 CO 7, ¶ 15, 524 P.3d
 36, 40. We strive to effectuate
 
 13
 
 the legislature's intent, "look[ing] first and
 foremost at 'the language the legislature has actually
 chosen to express itself'" and giving the text its
 plain and ordinary meaning. People v. Lucy, 2020 CO
 68, ¶ 29, 467 P.3d 332, 338 (quoting In re
 People in Int. of A.A., 2013 CO 65, ¶ 10, 312 P.3d
 1170, 1172). We assume that the legislature chose its
 language deliberately, see People v. Guenther, 740
 P.2d 971, 975 (Colo. 1987), and with "aware[ness] of the
 previously expressed legal importance of the words and
 phrases it uses," Rockwell, 125 P.3d at 417.
 
 
          ¶22
 Second, we evaluate whether the trial court properly denied
 the People's motion to exclude evidence of Bowen's
 suicidal intent in this case. Trial courts have broad
 discretion to decide the admissibility of evidence in light
 of its probative value and potential prejudicial impact.
 Elmarr, ¶ 20, 351 P.3d at 437. Accordingly, we
 review a trial court's evidentiary ruling for an abuse of
 discretion-that is, to determine whether the ruling is
 manifestly arbitrary, unreasonable, or unfair, or stems from
 an erroneous view of the law. Id. at ¶ 20, 351
 P.3d at 437-38.
 
 
          B. A
 Fentanyl User's Suicidal Intent May Be Relevant to
 Determining the Issue of Proximate Cause Under Section
 18-18-405(2)(a)(III)(A)
 
 
          ¶23
 Section 18-18-405(1)(a) criminalizes the distribution of a
 controlled substance. If the distribution involves four grams
 or less of a substance containing fentanyl, the sentencing
 range varies based on the circumstances of the offense. A
 
 14
 
 level three drug felony carries a presumptive range of two to
 four years in prison. § 18-1.3-401.5(2)(a); §
 18-18-405(2)(c)(V). By contrast, a level one drug felony
 carries a presumptive range of eight to thirty-two years in
 prison. § 18-1.3-401.5(2)(a); §
 18-18-405(2)(a)(III)(A), (B). Section 18-18-405(2)(a)(III)(A)
 elevates a distribution offense to a level one drug felony if
 the People prove that the defendant's distribution of
 fentanyl to the purchaser was "the proximate cause"
 of the purchaser's death. § 18-18-405(2)(a)(III)(A).
 
 
          ¶24
 The term "proximate cause" carries special legal
 significance. When a crime requires not merely conduct but
 also a specified result, a defendant generally may not be
 convicted unless their conduct is both the actual cause and
 the legal (or "proximate") cause of the result.
 Burrage v. United States, 571 U.S. 204, 210 (2014);
 1 Wayne R. LaFave, Substantive Criminal Law §
 6.4(a), Westlaw (3d ed. database updated Oct. 2024). An
 "actual" or "but-for" cause is any cause
 "but for" which the harm would not have occurred.
 Burrage, 571 U.S. at 211. A "proximate
 cause" is "any 'cause which in natural and
 probable sequence produced the claimed injury.'"
 Martinez v. People, 2024 CO 6M, ¶ 13, 542 P.3d
 675, 679 (quoting Stewart, 55 P.3d at 116). The
 proximate-cause requirement thus limits a defendant's
 criminal liability for an injury to circumstances in which
 there is a "causal connection" between the
 defendant's conduct and the injury. People v.
 Lopez, 97 P.3d 277, 280 (Colo.App. 2004).
 
 15
 
          ¶25
 Some events break this causal connection by
 "interrupt[ing] the natural and probable sequence of
 events following the defendant's acts." Id.
 at 282. When such "intervening causes" arise, the
 defendant's unlawful conduct cannot be the legal or
 proximate cause of another's injury. Martinez,
 ¶ 13, 542 P.3d at 679. To constitute an
 "intervening cause," an event must exhibit three
 qualities: (1) the defendant must not have participated in
 the event, (2) the event must not have been reasonably
 foreseeable, and (3) the event must have been a cause but for
 which the injury would not have occurred.
 Saavedra-Rodriguez, 971 P.2d at 226; see also
 Lopez, 97 P.3d at 282 (summarizing the three
 requirements).
 
 
          ¶26
 The parties generally agree on these principles of proximate
 cause analysis and the role of intervening causes within that
 analysis. They disagree, however, over whether a drug
 purchaser's consumption of fentanyl with the intent to
 die by suicide may serve as an intervening cause under
 section 18-18-405(2)(a)(III)(A)'s proximate-cause
 requirement. The People argue that the legislature intended
 to subject any defendant who distributes fentanyl that causes
 a user's death to an enhanced penalty, regardless of the
 purchaser's intent in taking the fentanyl. Relying
 largely on other jurisdictions' case law, they contend
 that a purchaser's suicidal intent cannot sever the
 causal connection between a defendant's distribution of
 fentanyl and the purchaser's death because death is
 always a foreseeable consequence of illicit fentanyl use.
 
 16
 
          ¶27
 Beverly responds that the People's interpretation of
 section 18-18-405(2)(a)(III)(A) reads the term
 "proximate cause" as equivalent to "but-for
 cause," contrary to the statute's plain language. He
 further argues that the People's proximate cause analysis
 relies on inapposite cases that arose under distinguishable
 legal regimes. We agree with Beverly based on our
 interpretation of the statute, our understanding of the
 proximate-cause requirement, and the fundamentally factual
 nature of the proximate cause inquiry.
 
 
          ¶28
 First, the plain language of section 18-18-405(2)(a)(III)(A)
 expressly imposes a "proximate cause"
 requirement.[2] Had the General Assembly intended to
 trigger an enhanced penalty anytime a fentanyl distribution
 "results in" a user's death, it could have said
 so. For example, the United States Code enhances the federal
 penalty for drug distribution "if death or serious
 bodily injury results from the use
 
 17
 
 of" the drugs a defendant distributed. 21 U.S.C. §
 841(b)(1)(B), (C), (E) (emphasis added). By the time of H.B.
 22-1326's enactment, numerous federal courts had
 interpreted section 841(b)(1) as imposing only a but-for
 cause requirement. E.g., United States v.
 Jeffries, 958 F.3d 517, 520-21 (6th Cir. 2020)
 ("The proper inquiry . . . is whether death arose as an
 effect, issue, or outcome from drug use. . . . [,] not
 whether death was a foreseeable result of the defendant's
 [distribution] violation."); United States v.
 Burkholder, 816 F.3d 607, 614-18 (10th Cir. 2016)
 (explaining why the plain language of section 841(b)(1) does
 not impose a proximate-cause requirement).
 
 
          ¶29
 But the General Assembly did not follow the federal example.
 Instead, section 18-18-405(2)(a)(III)(A) unambiguously
 requires the defendant's distribution to be the
 "proximate cause" of the drug-purchaser's death
 to enhance the defendant's potential
 penalty.[3] Because we assume the General Assembly
 
 18
 
 understands the legal import of the language it uses,
 Rockwell, 125 P.3d at 417, the defendant's
 distribution is not the "proximate cause" of the
 purchaser's death unless it is a "cause which in
 natural and probable sequence produced" that death,
 Martinez, ¶ 13, 542 P.3d at 679 (quoting
 Stewart, 55 P.3d at 116). And even if the
 defendant's distribution satisfies this definition, it
 does not constitute the "proximate cause" of the
 purchaser's death if an intervening cause exists.
 Saavedra-Rodriguez, 971 P.2d at 226. Therefore, the
 question here is simply whether evidence of a purchaser's
 suicidal intent may be relevant to establishing an
 intervening cause (suicide) when the purchaser died by
 overdosing on fentanyl.
 
 
          ¶30
 Second, and in response to this question, we conclude that
 evidence of a purchaser's suicidal intent may be relevant
 to establishing an intervening cause when the purchaser's
 suicide was unforeseeable. The People contend that a
 reasonable person distributing illicit drugs should foresee
 the possibility that any of their purchasers will die upon
 ingesting the drugs they purchased. Like courts in other
 jurisdictions, we agree with this premise to the extent it
 encompasses purchasers who consume so much of a dangerous
 drug that they unintentionally die as a result. See,
 e.g., State v. Thomas, 211 A.3d 274, 301 (Md.
 2019) ("Ingesting heroin is a foreseeable result of its
 supply, and death a foreseeable consequence of
 
 19
 
 its ingestion." (citation omitted)); State v.
 McCrorey, 896 S.E.2d 309, 313-15. (N.C. Ct. App. 2023)
 (rejecting the defendant's argument that he could not
 have reasonably foreseen that the purchaser would consume all
 the drugs at the same time); Yeary v. State, 186
 N.E.3d 662, 673 (Ind.Ct.App. 2022) (holding that the
 purchaser's consumption of drugs could not be an
 intervening cause because it was a foreseeable result of
 distribution).
 
 
          ¶31
 But we are not persuaded that a reasonable person who
 distributes fentanyl should, as a matter of law, always
 foresee the possibility that a purchaser will consume
 extraordinary amounts of fentanyl with the intent to die by
 suicide. True, a purchaser may overdose by accidentally
 consuming more fentanyl than they intended to consume. But
 when a purchaser consumes large amounts of fentanyl with the
 intent to die by suicide, they make "a voluntary and
 willful choice." Moore v. W. Forge Corp., 192
 P.3d 427, 436 (Colo.App. 2007) (noting that suicide generally
 precludes tort liability for the death of another); LaFave,
 supra. § 6.4(c) (explaining that proximate
 cause is typically treated in the same way in both criminal
 and civil contexts). Though a fentanyl distributor should
 foresee that distributing fentanyl may result in death by
 accidental overdose, the distributor should not necessarily
 be expected to foresee, in every case, that a purchaser will
 make the "abnormal" decision to intentionally die
 by way of ingesting "extraordinary" amounts of
 fentanyl. Saavedra-Rodriguez, 971 P.2d at 226-27
 
 20
 
 (characterizing an event as "unforeseeable" for
 purposes of determining whether it constitutes an intervening
 cause when that event is "abnormal" or
 "extraordinary").
 
 
          ¶32
 We therefore decline to follow the example of those few
 courts that have concluded that because accidental death is a
 reasonably foreseeable result of drug distribution, death by
 suicide is also reasonably foreseeable. E.g.,
 Baker, 2021 WL 3052916, at *4-6 (holding that
 evidence of a purchaser's suicidal intent would not
 affect the conclusion that his death was a foreseeable result
 of the defendant's distribution); State v.
 Price, 135 N.E.3d 1093, 1113-14 (Ohio Ct. App. 2019)
 (same). Baker's and Price's
 emphasis on the fact that drug sellers reasonably should
 foresee the drug-related death of a purchaser, regardless of
 the manner in which that death occurs, gives insufficient
 weight to the purpose of the proximate cause analysis:
 "'to spell out rules of law limiting the liability
 of a negligent actor'" based on foreseeability,
 which represents "policy considerations of whether a
 defendant's responsibility should extend to the results
 in question." Boulders at Escalante LLC v. Otten
 Johnson Robinson Neff & Ragonetti PC, 2015 COA 85,
 ¶¶ 50-51, 412 P.3d 751, 762 (quoting
 Moore, 192 P.3d at 436). Because suicide strikes us
 as the kind of "abnormal" behavior we should not
 expect defendants to foresee, at least in some circumstances,
 we conclude that a purchaser's suicide by intentional
 
 21
 
 overdose may sever the causal connection between a
 defendant's sale of drugs and the purchaser's death.
 
 
          ¶33
 Finally, we decline to declare that a purchaser's
 suicidal intent is categorically irrelevant to section
 18-18-405(2)(a)(III)(A)'s proximate-cause requirement
 because proximate cause "is, at its core, a fact-based
 determination." Martinez, ¶ 29, 542 P.3d
 at 682. When that determination requires deciding whether a
 purchaser's suicide constitutes an intervening cause, a
 reasonable jury may reach different conclusions under
 different circumstances.
 
 
          ¶34
 Recall that for an event to qualify as an intervening cause,
 (1) the defendant must not have participated in the event;
 (2) the event must not have been reasonably foreseeable; and
 (3) the event must have been a but-for cause of the injury.
 Saavedra-Rodriguez, 971 P.2d at 226; see also
 Lopez, 97 P.3d at 282 (summarizing the three
 requirements). What if evidence showed the purchaser was
 unaware that the purchased drugs contained fentanyl? See,
 e.g., McCrorey, 896 S.E.2d at 313 (stating that
 the purchaser believed she was buying heroin, not fentanyl);
 Yeary, 186 N.E.3d 668-69 (same). In that scenario, a
 reasonable jury might conclude that the defendant effectively
 participated in the purchaser's suicide by distributing
 drugs the defendant knew were more potent than the purchaser
 believed. Saavedra-Rodriguez, 971 P.2d at 226. What
 if the defendant was aware, or should have been aware, of the
 purchaser's suicidal tendencies?
 
 22
 
 See, e.g., Camacho, 2024 WL 2089948, at *1-2
 (describing the defendant's decision to sell the
 purchaser more fentanyl pills after learning that, earlier
 that day, the purchaser was treated for an overdose from
 those same pills). If so, a reasonable jury might conclude
 that the purchaser's suicide was reasonably foreseeable
 because the defendant observed signs of the purchaser's
 suicidal ideation. Saavedra-Rodriguez, 971 P.2d at
 226. And what if the defendant has evidence suggesting that
 the purchaser would have died by suicide in some manner, even
 if they had not procured drugs from the defendant? See
 Camacho, 2024 WL 2089948, at *7 (requiring the defendant
 to "show that, without the drug distributed by the
 defendant, the [purchaser] would still have committed suicide
 by other means at the same time"). A reasonable jury
 would have to weigh that evidence to determine whether it
 shows that suicide was a but-for cause of the purchaser's
 death. Saavedra-Rodriguez, 971 P.2d at 226.
 
 
          ¶35
 In sum, section 18-18-405(2)(a)(III)(A) plainly requires a
 defendant's distribution to be the "proximate
 cause" of the purchaser's death to enhance the
 defendant's penalty. And contrary to the People's
 contention, our review of relevant authorities does not
 persuade us that suicidal intent is never, as a matter of
 law, relevant to the determination of proximate cause.
 Because the circumstances surrounding a purchaser's death
 may render their suicidal intent relevant to section
 18-18-405(2)(a)(III)(A)'s proximate-cause requirement, we
 
 23
 
 cannot categorically exclude evidence of suicidal intent from
 the analysis the statute demands. Accordingly, we hold that
 evidence of a purchaser's suicidal intent may be relevant
 to determining whether a defendant's distribution of
 fentanyl to a purchaser was the proximate cause of the
 purchaser's death under section 18-18-405(2)(a)(III)(A).
 
 
          ¶36
 We now turn to the question of whether the trial court abused
 its discretion by denying the People's motion to exclude
 such evidence here.
 
 
          C. The
 Trial Court Did Not Abuse its Discretion by Denying the
 People's Motion to Exclude Evidence of Bowen's
 Suicidal Intent
 
 
          ¶37
 The People raise two grounds for excluding the evidence of
 Bowen's suicidal intent, including the text message Bowen
 sent to his girlfriend and the coroner's expert testimony
 on manner of death. First, they contend that such evidence is
 not relevant to the proximate cause analysis. See
 CRE 402. Second, they argue that the limited probative value
 of such evidence is substantially outweighed by the risk that
 it will confuse the jury. See CRE 403. We are not
 persuaded that the trial court abused its discretion on
 either ground.
 
 
          ¶38
 First, consistent with our holding that evidence of suicidal
 intent may be relevant to the proximate-cause inquiry under
 section 18-18-405(2)(a)(III)(A), the trial court properly
 concluded that evidence of Bowen's suicidal intent may be
 relevant here. "Evidence is relevant if it has 'any
 tendency to make the existence
 
 24
 
 of any fact that is of consequence to the determination of
 the action more probable or less probable than it would be
 without the evidence.'" People v. Acosta,
 2014 COA 82, ¶ 56, 338 P.3d 472, 482 (quoting CRE 401).
 Bowen's text to his girlfriend describing how much he
 loved her, saying goodbye, and stating that he was "just
 not strong enough to do this anymore" suggests he was
 contemplating suicide the morning of his death. And evidence
 that the concentration of fentanyl in Bowen's blood was
 among the highest the coroner had ever seen supports the
 coroner's expert opinion that Bowen died by suicide.
 Evidence of suicidal ideation, coupled with physical evidence
 of suicide, makes more probable the fact that Bowen
 intentionally consumed a very large quantity of fentanyl to
 effectively guarantee his death. And Bowen's suicide may
 serve as an intervening cause that severs the connection
 between Beverly's actions and Bowen's death.
 
 
          ¶39
 Second, we disagree with the People's contention that
 evidence of Bowen's suicide would confuse the jury by
 mistakenly suggesting that Bowen's intent in taking the
 fentanyl pills is relevant here. As we have already
 explained, Bowen's intent is relevant to the extent it
 supports Beverly's assertion that Bowen's suicide was
 an intervening cause that interrupted the causal connection
 between Beverly's conduct and Bowen's death.
 Furthermore, we give evidence challenged under CRE 403
 "the maximum probative value attributable to it by a
 reasonable factfinder and the minimum unfair prejudice that
 may be reasonably expected
 
 25
 
 from it." People v. Vanderpauye, 2023 CO 42,
 ¶ 59, 530 P.3d 1214, 1228-29. Applying these principles
 here, we have no difficulty concluding that Bowen's text
 message and the coroner's testimony are sufficiently
 probative of Bowen's suicide-and, thus, of a potential
 intervening cause-to overcome any risk of confusing the jury
 for purposes of CRE 403.
 
 
          ¶40
 In sum, we hold that the trial court did not abuse its
 discretion by concluding that evidence of Bowen's
 suicidal intent may be admissible to counter the People's
 assertion that Beverly's conduct proximately caused
 Bowen's death.
 
 
          IV.
 Conclusion
 
 
          ¶41
 When the General Assembly enacted H.B. 22-1326, it plainly
 sought to increase penalties for those who distribute
 substances containing fentanyl where that distribution is the
 "proximate cause" of the consumer's death.
 Affording the legislature's language its well-established
 legal significance, we hold that evidence of a
 purchaser's suicidal intent may be relevant in
 determining whether a defendant's distribution of
 fentanyl was the proximate cause of the purchaser's
 death. And we hold that, here, the trial court did not abuse
 its discretion by denying the People's motion to exclude
 such evidence.
 
 
          ¶42
 We stress the limited scope of our decision. Though evidence
 of Bowen's suicidal intent may be admissible here, such
 evidence may not always be admissible in cases brought under
 section 18-18-405(2)(a)(III)(A). Even when such
 
 26
 
 evidence is admissible, it may not suffice for the trial
 court to instruct the jury on intervening cause. See
 Saaoedra-Rodriguez, 971 P.2d at 228 (requiring "a
 scintilla of evidence" supporting an intervening-cause
 defense for a corresponding jury instruction). And even when
 the evidence is sufficient to warrant a jury instruction, a
 reasonable jury may well find in the People's favor. Our
 holding merely leaves the factual question of proximate cause
 where it belongs - with the jury.
 
 
          ¶43
 For these reasons, we discharge the order to show cause and
 affirm the trial court's evidentiary ruling.
 JUSTICE BOATRIGHT, joined by JUSTICE
 BERKENKOTTER, dissented.
 
 27
 
          
 JUSTICE BOATRIGHT, joined by JUSTICE BERKENKOTTER,
 dissenting.
 
 
          ¶44
 The death of Matthew Bowen by a drug overdose was not just
 foreseeable, it was practically expected. It is undisputed
 that fentanyl is the "primary driver" of
 drug-poisoning deaths.[4] It is also undisputed that someone
 distributed fentanyl to Bowen, who then died of fentanyl
 intoxication. Patrick L. Beverly, II, has been charged with
 that distribution. Beverly now attempts to hide behind
 evidence that Bowen took the fentanyl with the intent to end
 his own life. In my view, whether Bowen died from an
 accidental overdose or an intentional suicide, the fact
 remains that if Beverly sold Bowen the fentanyl that led to
 his overdose, then Beverly is legally responsible for
 Bowen's death.
 
 
          ¶45
 The legal question presented is whether the distribution of
 fentanyl was the proximate cause of the death in this case as
 required by section 18-18-405(2)(a)(III), C.R.S. (2024). If
 it was, then Bowen's intent in taking the drugs is
 irrelevant and any evidence regarding that intent should be
 excluded. Under the majority's construction of the
 proximate cause requirement, Bowen's suicide, if proven
 at trial, may qualify as an independent intervening cause.
 Maj. op. ¶¶ 30-32. Thus, in the majority's
 view, evidence of Bowen's intent to end his life is
 relevant as to
 
 28
 
 whether Beverly's distribution of fentanyl was the
 proximate cause of Bowen's death. Id. at
 ¶¶ 33-35.
 
 
          ¶46
 I disagree. Given the danger inherent in illegal fentanyl
 use, the risk of death to Bowen was foreseeable at the time
 of distribution, regardless of whether the death was an
 intentional suicide or an accidental overdose. Selling
 fentanyl obtained on the black market is the equivalent of
 selling someone a gun and bullets, knowing that the purchaser
 plans to repeatedly play Russian Roulette. Death of the
 person buying the gun and bullets, under those circumstances,
 is not only foreseeable, but virtually inevitable.
 
 
          ¶47
 The same is true under the facts of this case. As alleged,
 Bowen purchased illicit fentanyl from Beverly. There was no
 prescription indicating the proper dosage. There was no way
 to know the pills' potency, or even if each pill
 contained comparable amounts of fentanyl. What is known is
 that Bowen was sold a lethal amount of fentanyl at a cost of
 $90; there was enough fentanyl that Bowen could ingest it in
 "massive amounts"; this ingestion resulted in a
 fentanyl concentration in Bowen's blood that was
 "exceptionally high"[5]; and the fentanyl caused
 Bowen's death. In my view, the act of selling Bowen
 fentanyl is the proximate cause of Bowen's death, and
 Bowen's mindset is irrelevant. Hence, I respectfully
 dissent.
 
 29
 
          I. The
 Facts of This Case Do Not Implicate an Independent
 Intervening Cause
 
 
          ¶48
 "Proximate cause" requires a causal connection
 between a defendant's conduct and the claimed injury;
 conduct that is interrupted by an intervening cause cannot be
 the proximate cause of another's death. People v.
 Stewart, 55 P.3d 107, 120-21 (Colo. 2002). "An
 independent intervening cause is an act of an independent
 person or entity that destroys the causal connection between
 the defendant's act and the victim's injury and,
 thereby becomes the cause of the victim's injury."
 People v. Saavedra-Rodriguez, 971 P.2d 223, 225-26
 (Colo. 1998).
 
 
          ¶49
 I agree with the test applied by the majority, Maj. op.
 ¶ 25, which requires that, in order to establish an
 intervening cause defense, three elements be satisfied:
 "(1) the defendant must not participate in the
 intervening cause; (2) the intervening cause is one but for
 which the death would not have occurred; and (3) the
 intervening cause must not have been reasonably
 foreseeable." People v. Lopez, 97 P.3d 277, 282
 (Colo.App. 2004). A defendant's failure to establish even
 one of these elements "deprives him of the affirmative
 defense." People v. Counterman, No. 21CA1982,
 ¶ 18 (Feb. 13, 2025).
 
 
          ¶50
 In my view, Beverly fails on all three. First, under the
 alleged facts of this case, Beverly cannot fairly be
 characterized as a non-participant-he sold Bowen a lethal
 quantity of fentanyl that Bowen then consumed. Second,
 irrespective of Bowen's intent, the cause of his death
 was the consumption of a large quantity of
 
 30
 
 fentanyl allegedly distributed by Beverly. Moreover, the
 lethal quantity sold-coupled with the conspicuous trail of
 deaths fentanyl has left nationwide-demonstrate that the
 victim's death could easily have occurred irrespective of
 his mental state. And lastly, as to the third element, the
 misuse of fentanyl obtained illegally cannot logically be
 deemed unforeseeable; rather, the misuse of fentanyl under
 such circumstances is expected. In fact, there is no
 "ordinary" or "normal" use of fentanyl
 purchased illegally. See Maj. op. ¶ 31. Again,
 the failure to satisfy any of these three elements causes an
 intervening cause defense to fail. Accordingly, establishing
 an intervening cause is a high bar.
 
 
          ¶51
 Courts have generally been reluctant to allow an intervening
 cause defense absent sufficiently extreme conduct. For
 example, in the context of inadequate medical care, we held
 in People v. Fite, 627 P.2d 761, 767 (Colo. 1981),
 that there was no evidence to support an intervening cause.
 There, the defendant shot her husband, who then underwent
 extensive medical care to address his injuries. Id.
 at 763. Unaware of a developing liver abscess, the attending
 physician discontinued antibiotics-the husband later died
 from infection and multiple organ failure, more than a month
 after the shooting. Id. The defendant argued that
 the victim's laboratory tests clearly indicated the
 presence of an infection that was left untreated; thus, the
 discontinuation of antibiotic treatment in spite of such
 signs constituted an intervening cause relieving her of
 criminal responsibility for
 
 31
 
 her husband's death. Id. at 766-67. This court
 disagreed, concluding that the record did not support a
 finding of gross negligence by the attending physician
 sufficient to break the causal chain. Id. Fite
 demonstrates that, even though the defendant did not directly
 participate in the events following the shooting-i.e., the
 victim's medical care-the natural consequences of a
 defendant's conduct extend well beyond the initial act.
 See id. If the facts in Fite do not
 implicate an intervening cause, certainly we cannot find one
 here.
 
 
          ¶52
 The majority concludes that evidence of Bowen's mental
 state may be relevant to establishing an intervening cause,
 Maj. op. ¶¶ 30, 32; yet, the caselaw is clear that
 a defendant must take his victim as he finds them.
 Hamrick v. People, 624 P.2d 1320, 1324 (Colo. 1981).
 In Hamrick, this court concluded that an instruction
 on intervening cause was not warranted where the defendant
 had attacked an individual with epilepsy. Id. at
 1323-24. In that case, after the defendant assaulted the
 victim with a club, the victim died of cardiac arrest due to
 an epileptic seizure. Id. at 1321-22. The parties
 disputed whether the seizure was caused by the trauma
 inflicted by the defendant, or by the victim's ingestion
 of alcohol and failure to take anti-convulsant medication.
 Id. at 1322. In concluding that the facts of the
 case did not give rise to an intervening cause, we noted that
 "it is no defense that the victim is suffering from
 physical infirmities." Id. at 1324. Today,
 however, the majority allows Beverly to rely on what is
 arguably Bowen's
 
 32
 
 mental health condition to potentially avoid responsibility.
 Just as in Hamrick, Bowen's pre-existing medical
 condition here is no defense.
 
 
          ¶53
 If it is proven that Beverly sold Bowen the fentanyl that he
 later consumed, then Beverly's act of distribution
 incontrovertibly began the chain of events that caused
 Bowen's death. Thus, in accordance with the caselaw
 discussed above, it is my view that Beverly has failed to
 present sufficient evidence to support an intervening cause
 defense.
 
 
          II. A
 Drug Purchaser's Suicidal Intent Is Irrelevant to Section
 18-18-405(2)(a)(III)'s Proximate Cause Requirement
 
 
          ¶54
 Section 18-18-405(1)(a) provides that "it is unlawful
 for any person knowingly to manufacture, dispense, sell, or
 distribute . . . a controlled substance," including
 fentanyl. Furthermore, section 18-18-405(2)(a)(III) dictates
 that when the defendant's distribution is the proximate
 cause of another person's death, the offense is elevated
 to a level 1 drug felony.
 
 
          ¶55
 Under the majority's construction of section
 18-18-405(2)(a)(III), the proximate cause requirement allows
 for consideration of a purchaser's intended use of
 fentanyl in determining whether the death was foreseeable.
 Maj. op. ¶¶ 30-32, 35, 41. From my perspective,
 that conclusion has a significant logical flaw-it assumes
 that a "normal" or "ordinary" use of
 fentanyl obtained illegally on the black market exists in the
 first instance. See Maj. op. ¶ 31. In fact,
 there is
 
 33
 
 no such use. The reality is that any use of illicit
 fentanyl carries with it the risk of death. The fentanyl that
 Bowen consumed did not have a prescription explaining how to
 safely use the drug. Bowen, and likely Beverly, could not
 have known how much fentanyl was contained in each pill. The
 coroner testified, and I address below, that a single pill
 could contain a fatal dose. That is why, in my mind, selling
 illicit fentanyl is tantamount to facilitating a game of
 Russian Roulette.
 
 
          ¶56
 This view aligns with the plain language of the statute.
 Section 18-18-405(2)(a)(III) provides that when the
 defendant's distribution of fentanyl is "the
 proximate cause of the death of another person who used or
 consumed" the fentanyl, the defendant is liable. The
 "proximate cause" is the defendant's provision
 of fentanyl. See id. In other words, the statute
 subjects a distributor of fentanyl to enhanced criminal
 liability when such distribution leads to the death of
 another, irrespective of that person's intent in
 purchasing the drug. There is nothing in the plain language
 of the statute to suggest that the legislature intended for
 liability to hinge on the fentanyl user's intent. In
 accordance with this reading, the prosecution need only
 establish that the defendant distributed fentanyl to another
 person and that the person died because of that same
 fentanyl. Whether the person intended to end their life is
 irrelevant.
 
 
          ¶57
 This interpretation is consistent with the legislature's
 purpose in amending the statute to add the proximate cause
 charge enhancers. In response to the
 
 34
 
 increased number of overdose deaths in Colorado, the General
 Assembly sought to provide heightened penalties for
 defendants whose unlawful distribution of fentanyl
 "leads to the death of another person."
 See Ch. 225, sec. 1(2)(b), 2022 Colo. Sess. Laws
 1625, 1626. Nowhere in the statute itself or in the
 corresponding legislative declaration does the General
 Assembly indicate that it intended to differentiate between
 accidental and intentional overdose fatalities. See
 Ch. 225, sec. 1(1)(b), 2022 Colo. Sess. Laws 1625, 1625
 ("The increase in the number of overdose deaths
 in Colorado demands a comprehensive response . . . designed
 to reduce the risks of harm to all people."
 (emphases added)); see also §
 18-18-405(2)(a)(III).
 
 
          ¶58
 Thus, section 18-18-405 criminalizes a defendant's act of
 distributing fentanyl that causes a death-intentional or
 otherwise-such that the distribution itself is the proximate
 cause.
 
 
          III.
 The Act of Distribution Was the Proximate Cause of
 Bowen's Death
 
 
          ¶59
 The question before us is whether Beverly's distribution
 of fentanyl was the proximate cause of Bowen's death. In
 other words, the issue turns on whether the act of
 distribution "began a chain of events the natural and
 probable consequence of which was the victim's
 death," Saavedra-Rodriguez, 971 P.2d at 225, or
 instead whether "the causal link between conduct and
 result is so attenuated that the consequence is more aptly
 described as mere fortuity," Paroline v. United
 States,
 
 35
 
 572 U.S. 434, 445 (2014). In my opinion, Beverly's
 alleged act of distributing a fatal dosage of fentanyl is not
 so attenuated that Bowen's death can be attributed to
 mere chance. Rather, the unlawful distribution of fentanyl
 initiated the causal chain without which the decedent's
 injury would not have occurred. See Stewart, 55 P.3d
 at 121.
 
 
          ¶60
 The approach adopted by the majority suggests that when a
 person does not communicate their specific intended usage to
 a distributor, that person's subsequent misuse of
 fentanyl cannot have been foreseeable. Indeed, the majority
 references the trial court's finding that Beverly could
 not have reasonably foreseen that Bowen would misuse the
 fentanyl sold to him. Maj. op. ¶ 15. Again, I must
 reiterate that illicit fentanyl has no proper use.
 Any illegal drug use is a misuse.
 
 
          ¶61
 At the hearing before the trial court, the coroner testified
 about the danger inherent to fentanyl usage, noting that
 "it takes smaller amounts . . . of [fentanyl] to reach
 those thresholds that cause death."[6] He further
 testified that in cases involving illicit drugs, there is no
 way for the person taking the fentanyl to know how much of
 the drug is contained in a given pill: "There could be
 no fentanyl,
 
 36
 
 there could be no active compounds at all. Or there could be
 lethal levels that even with a single pill could cause
 death."[7]
 
 
          ¶62
 Indeed, national laboratory testing performed by the Drug
 Enforcement agency ("DEA") in 2023-the year of
 Bowen's death-indicated that seven out of every ten
 counterfeit prescription pills contained a potentially lethal
 dose of fentanyl.[8] Dep't of Just. Drug Enf't Admin.,
 Fake Pills Fact Sheet (Sept. 2023),
 https://www.dea.gov/sites/default/files/2024-01/DEA-OPCK_FactSheet_September_2023-rdf.pdf
 [https://perma.cc/NQT4-NYW6]. The DEA report further
 notes that a mere two milligrams of fentanyl is considered a
 deadly dose. Id. It therefore stands to reason that
 where a defendant sells a sufficiently high quantity of
 fentanyl, they are selling a lethal dose.
 
 
          ¶63
 The danger inherent in unsupervised fentanyl use is further
 apparent from recent trends in drug overdoses in Colorado.
 The number of fentanyl-related
 
 37
 
 deaths reached a record high in 2023. See Christine
 Demont, Trends in Fatal and Nonfatal Drug Overdoses in
 Colorado, Colo. Dep't of Pub. Health & Env't
 (June 21, 2024),
 https://coag.gov/app/uploads/2024/08/Fatal_and_Nonfatal_Drug_Overdose_Trends_SATF.pdf
 [https://perma.cc/8UVR-HB6H] (accounting for both
 unintentional and intentional drug poisonings). In looking to
 the total number of drug overdose deaths in Colorado for that
 year, more than half were attributable to fentanyl.
 Id. Bowen took an inherently dangerous drug that was
 provided to him, with no way of knowing the dosage, which
 directly caused his death. Whether he did so with the
 intention of ending his life is irrelevant to the question of
 whether his death was foreseeable to Beverly.
 
 
          ¶64
 Beverly's alleged act of distribution exposed Bowen to a
 recognizable and high degree of risk of harm, the
 "natural and probable consequence" of which was
 death by overdose, such that evidence of intended usage
 should be excluded. See Saavedra-Rodriguez, 971 P.2d
 at 225. Bowen's death would have been foreseeable to
 anyone who illegally sold him fentanyl, particularly where
 the quantity sold was capable of leading to a fatality.
 Indeed, some courts have recognized that a purchaser's
 death is always a foreseeable result of the illegal
 distribution of fentanyl; this is certainly true where the
 distribution is of a lethal amount. See United States v.
 Jeffries, 958 F.3d 517, 521 (6th Cir. 2020) ("Use
 of a Schedule I or II controlled substance is inherently
 dangerous. Death to the drug user is therefore
 
 38
 
 always foreseeable when a defendant . . . distributes . . .
 those substances.").[9]Accordingly, when the use of fentanyl
 results in death, "the causal link between the
 defendant's proscribed conduct and the death is simply
 not 'so attenuated' as to preclude criminal
 liability." Id. (quoting Paroline, 572
 U.S. at 445).
 
 
          IV.
 Conclusion
 
 
          ¶65
 Notwithstanding the intent underlying a decedent's death,
 whenever a lethal quantity of fentanyl is distributed in
 violation of section 18-18-405, death is a reasonably
 foreseeable result of the proscribed conduct. Here, Beverly
 is accused of distributing fentanyl to Bowen immediately
 before his death from fentanyl intoxication. Whether Bowen
 intended to end his own life by taking the fentanyl sold to
 him is irrelevant; the act of distribution was the proximate
 cause of Bowen's death as a matter of law. Hence, I
 respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We quote the text message exactly as
 it appears in the record. We omit Bowen's
 girlfriend's name and his mother's phone number to
 maintain their privacy.
 
 
 [2] During the hearing on the People's
 motion, the trial court asked the parties whether the
 statute's use of the term, "the proximate
 cause," as opposed to "a proximate
 cause," carries any significance. (Emphases added). In
 its response to the People's C.A.R. 21 petition, the
 trial court suggests that a ruling in Beverly's favor
 assumes that a defendant may face section
 18-18-405(2)(a)(III)(A)'s enhanced penalty only if their
 distribution of fentanyl was the sole proximate
 cause of the purchaser's death-despite precedent
 indicating that there may be more than one proximate cause of
 the same result. E.g., Lopez, 97 P.3d at
 280. We disagree with the trial court's suggestion
 because "[u]nlawful conduct that is broken by an
 independent intervening cause cannot be the proximate
 cause of injury to another." Martinez,
 ¶ 13, 542 P.3d at 679 (alteration in original) (emphasis
 added) (quoting Stewart, 55 P.3d at 121). Thus, even
 if section 18-18-405(2)(a)(III)(A) allows for multiple
 proximate causes, fentanyl distribution is not one of them
 when an intervening cause exists.
 
 
 [3] Contrary to the People's
 contention, nothing in the legislative declaration
 conclusively establishes that the General Assembly sought to
 enhance punishment for defendants who distribute drugs that a
 purchaser consumes with the intent to die by suicide (rather
 than by accidental overdose). At most, the legislative
 declaration is ambiguous as to whether a purchaser's
 intent is relevant to the proximate cause inquiry.
 See 2022 Colo. Sess. Laws at 1626 (stating the
 General Assembly's intent to "specifically design[]
 penalties for people whose . . . distribution [of fentanyl] .
 . . leads to the death of another person"). In any
 event, language in a legislative declaration cannot override
 the plain language chosen by the legislature in a statute.
 See People in Int. of T.B., 2019 CO 53, ¶ 33,
 445 P.3d 1049, 1056 (explaining that language in a
 legislative declaration does not "narrow or otherwise
 modify the actual elements" of an offense). Accordingly,
 we ground our analysis in the unambiguous "proximate
 cause" language the legislature chose to use in section
 18-18-405(2)(a)(III)(A).
 
 
 [4] As of 2024, fentanyl continues to be
 associated with the high number of overdose fatalities in the
 United States. See Dep't of Just. Drug Enf't
 Admin., Fake Pills Fact Sheet (Nov. 2024),
 https://www.dea.gov/sites/default/files/2024-11/DEA-OPCK_FactSheet_November_2024.pdf
 [https://perma.cc/2X6T-4WQM].
 
 
 [5] The coroner who performed the
 decedent's autopsy testified to these facts at the
 hearing on the People's motion in limine, first
 referenced in Maj. op. ¶ 13.
 
 
 [6] Beverly is accused of selling the
 decedent $90 worth of fentanyl pills. While the defense's
 witness was reluctant to speculate on the precise amount of
 fentanyl required to produce the concentration observed in
 Bowen, he did note that Bowen had ingested an
 "exceptionally large amount" of the drug.
 
 
 [7] Relatedly, the coroner conceded that
 he has "no way of knowing" how many pills would
 result in the concentration of fentanyl observed in Bowen.
 Even in cases where pills are recovered, "We could test
 those, but it doesn't mean that the pills that they
 ingested had those same levels of fentanyl." Referencing
 drugs that are manufactured illegally, the coroner testified
 that, "when you test them, they're dramatically
 different from one pill to the next. From one person to the
 next, even within the same bag."
 
 
 [8] More recent data from the DEA
 demonstrates that counterfeit pills remain highly lethal,
 with five out of every ten pills with fentanyl containing a
 potentially lethal dose. Dep't of Just. Drug Enf't
 Admin., Fake Pills Fact Sheet (Nov. 2024),
 https://
 www.dea.gov/sites/default/files/2024-11/DEA-OPCK_FactSheet_November_2024.pdf
 [https://perma.cc/2X6T-4WQM].
 
 
 [9] The position in Jeffries is
 consistent with those adopted by other jurisdictions that
 have considered the issue of foreseeability in
 fentanyl-related deaths. See, e.g., State v.
 Price, 135 N.E.3d 1093, 1114 (Ohio Ct. App. 2019)
 (finding that whether the victim was suicidal would not
 change the fact that the victim took drugs furnished by the
 defendant and died as a result); see also Baker v.
 State, No. 2469, 2021 WL 3052916, at *4-6 (Md. Ct. Spec.
 App. July 20, 2021) (unpublished opinion) (same).
 
 
 ---------